UNITED STATES of America, Plaintiff,

v.

Robert L. BRANDON, Defendant.

No. C–C–83–580–M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 8, 1984.

As Amended May 17, 1984.

Charles R. Brewer, U.S. Atty., Asheville, N.C., for plaintiff.

Robert L. Brandon, pro se.

## ORDER

McMILLAN, District Judge.

On July 26, 1983, the United States of America filed suit against defendant, a veteran of military service, seeking to recover $2,532.63 which was paid to defendant by the Veterans' Administration (VA) as an educational assistance allowance, but to which plaintiff now says defendant was not entitled. On August 24, 1983, defendant answered the complaint, admitting that he received the money and used it to pay tuition at Central Piedmont Community College in Charlotte, but denying any indebtedness to the plaintiff. On December 1, 1983, this court heard argument on plaintiff's motion for summary judgment, but delayed ruling so that the parties could submit further evidence and argument for their respective positions.

## I.

### THIS COURT MAY PROPERLY EXAMINE THE VALIDITY OF THE ALLEGED DEBT OWED TO THE PLAINTIFF.

The United States has taken a curious position by arguing, on the one hand, that

this court may examine the merits of this alleged debt so long as the court decides for the government, but that, on the other hand, this court may not determine whether defendant is, in fact, indebted to the government! In support of the first assertion, plaintiff relies on 38 U.S.C. §§ 1780(e) and 1785, which state that any over-payment of benefits to a veteran renders the veteran liable to the United States for that amount, and that the overpayment may be recovered "in the same manner as any other debt due to the United States." In support of the second assertion, plaintiff relies on 38 U.S.C. § 211(a) which states:

> [T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans ... shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

According to the government, then, the court has jurisdiction to rule for the government, but the court may not even consider ruling against the government.

This court cannot accept that Procustean proposition, and, in rejecting it, this court agrees with a number of other federal courts that have considered this issue. *De Magno v. United States*, 636 F.2d 714, 724–727 (D.C.Cir.1980); *DiSilvestro v. United States*, 405 F.2d 150 (2d Cir.1968). *Accord Perry v. United States*, 527 F.2d 629, 635–636, fn. 5, 208 Ct.Cl. 381 (1975); *Fountain v. United States*, 427 F.2d 759, 763, 192 Ct.Cl. 495 (1970) (Davis, J., dissenting). *Cf. State of Colorado v. Veterans Administration*, 430 F.Supp. 551, 557 (D.Colo.1977), *aff'd*, 602 F.2d 926 (10th Cir. 1979), *cert. denied*, 444 U.S. 1014, 100 S.Ct. 663, 62 L.Ed.2d 643 (1980) (38 U.S.C. § 211(a) does not bar judicial review of VA actions brought against third parties not recipients of VA gratuities). *Contra, United States v. Ramsey*, 539 F.Supp. 1062 (E.D.Tenn.1982).

■ In holding that 38 U.S.C. § 211(a) does not bar this court from deciding whether the veteran owes the money to the government, this court embraces the reasoning of Judge Wald in *De Magno, supra:*

> It is not at all unusual for a court to find it necessary in the course of deciding a dispute over which it does have jurisdiction to decide an issue which would be outside its jurisdiction if raised directly. * * * [A] court's lack of jurisdiction to decide an issue directly ... does not limit the court's power to decide the question to the extent it is relevant to the dispute over which it does have jurisdiction.

*Id.* at 724.

In this case, the United States is suing a veteran for more than $2,000, which, it claims, represents an overpayment of benefits and, therefore, is a debt. To allow the VA to make a unilateral determination that a debt is owed, and then, under the guise of 38 U.S.C. § 211(a), to shield that determination from review, "would make the courts but rubber stamps for administrative action ... serving no function but to render judgments preliminary to the issuance of execution thereon." *United States v. Owens*, 147 F.Supp. 309, 313–315 (E.D.Ark.1957). As stated in *de Magno, supra*, at 725:

> Not only would this theory, in effect, allow the VA to function as its own independent judge, jury and police force, determining first whether it has been the victim of a fraud and then setting out to remedy its own damages free of judicial interference, but carried to its logical conclusion, this interpretation of the statute would permit the VA to enlist the coercive power of the courts to enforce a money judgment against an individual without the basis of the VA's claim ever being subject to judicial scrutiny.

If 38 U.S.C. § 211(a) is given the interpretation sought by the plaintiff, then the "logical conclusion" feared in *De Magno* is forced upon this court today.

■ As noted by the *De Magno* court, such an interpretation would raise a substantial question as to the statute's constitutionality under the due process clause of the Fifth Amendment. *De Magno, supra,* at 725. It is at least arguable that a person deprived of liberty or property by an administrative action is at some point entitled to a judicial test of the legality of that action. *See* Note, *Congressional Preclusion of Judicial Review of Federal Benefit Disbursement: Reasserting Separation of Powers,* 97 Harv.L.Rev. 778 (1984). L. Jaffe, *Judicial Control of Administrative Action,* 384 (1965); Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic,* 66 Harv.L.Rev. 1362, 1387 (1953). There is also a strong view that the government's interpretation would run afoul of Article III of the Constitution. *See, e.g., Martin v. Hunter's Lessee,* 1 Wheat. 304, 4 L.Ed. 97 (1816) (the judicial power must be vested in some court, despite Congressionally imposed jurisdictional limitations); *St. Joseph's Stock Yards Co. v. United States,* 298 U.S. 38, 84, 56 S.Ct. 720, 740, 80 L.Ed. 1033 (1936) (Brandeis, J., concurring). Of course, it is well settled that, despite the language of 38 U.S.C. § 211(a), the federal courts have jurisdiction to consider the constitutionality of veterans' benefits legislation. *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). It is equally clear that a court, in construing a statute, should endeavor to find a fair construction of the statute which avoids constitutional questions. *Id.* at 367, 94 S.Ct. at 1165; *United States v. Thirty-Seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971).

For the above reasons, 38 U.S.C. § 211(a) does not prevent this court from examining the validity of the debt at issue here.

## II.
## PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT.

During the years 1979 and 1980, defendant received veteran's educational benefits in order to attend Central Piedmont Community College in Charlotte. He withdrew from or did not complete some of his courses within the allotted time, although he did later complete the requirements for a few of those courses.

■ Plaintiff contends that defendant's failure to complete enough courses to qualify as a full-time or half-time student made defendant ineligible for the benefits defendant had *already received.*

At the summary judgment hearing, the plaintiff argued that the statute governing this issue is 38 U.S.C. § 1780(e):

> If an eligible veteran or eligible person fails to enroll in or pursue a course for which an educational assistance or subsistence allowance advance payment is made, *the amount of such payment* and *any amount of subsequent payments which, in whole or in part, are due to erroneous information required to be furnished* under subsection (d)(2) of this section, *shall become an overpayment* and shall constitute a liability of such veteran or person to the United States *and may be recovered,* unless waived pursuant to section 3102 of this title, *from any benefit otherwise due* such veteran or person under any law administered by the Veterans' Administration or may be recovered *in the same manner as any other debt due* to the United States.

(Emphasis added.) Plaintiff asserted that the failure to complete enough courses to remain a full-time or half-time student constituted "erroneous information" under the statute and, thus, the veteran has to pay back the money! Plaintiff cited *United States v. Kirby,* 522 F.Supp. 424 (N.D.Ga. 1981), which is apparently the only reported case discussing § 1780(e), in support.

In a brief filed after the hearing, plaintiff abandoned the above argument under § 1780(e), and instead argued that the section governing this matter is 38 U.S.C. § 1780(a)(4):

> (a) Payment of educational assistance or subsistence allowances to eligible veterans or eligible persons pursuing a program of education or training ... in an educational institution ... shall be paid

as provided in this section .... Such payments shall be paid only for the period of such veterans' or persons' enrollment in, and pursuit of, such program, but *no amount shall be paid—*

\* \* \* \* \* \*

(4) to any eligible veteran or person *for a course for which the grade assigned is not used in computing the requirements for graduation including a course from which the student withdraws* unless the Administrator finds there are mitigating circumstances ....

(Emphasis added.)

Neither the *Kirby* case nor the parties have provided much helpful guidance.

Section 1780(a)(4) is not applicable to this case because it is clearly a *prospective* directive. The phrase, "no amount *shall be* paid," anticipates an appropriate *denial of future payment* of benefits, and no reasonable interpretation of the subsection will support this claim for *retrieval* of benefits *already* paid. Although paragraph (4) mentions grades and withdrawals, which both suggest a retrospective evaluation of a veteran's educational progress, the dominant subsection (a) indicates that such retrospective evaluation is applicable only in deciding whether to pay benefits in the future. (38 U.S.C. § 1674 authorizes the VA to discontinue educational benefits for unsatisfactory conduct or progress.)

Section 1780(e), now abandoned by the government, is, in fact, the applicable subsection. Section 1780(e) is clearly a retrospective directive. That subsection contemplates the *recovery,* in some circumstances, *of benefits already paid.*

If an eligible veteran or eligible person *fails to* enroll in or *pursue a course for which an educational assistance or subsistence allowance advance payment is made, the amount of such payment* and any amount of subsequent payments which, in whole or in part, are due to erroneous information required to be furnished under subsection (d)(2) of this section, *shall become an overpayment and*

*shall constitute a liability of such veteran or person to the United States and* may be recovered, unless waived pursuant to section 3102 of this title, from any benefit otherwise due such veteran or person under any law administered by the Veterans' Administration or *may be recovered in the same manner as any other debt due to the United States.*

Section 1780(e) provides that an advance payment becomes an overpayment in two situations: (1) If a veteran "fails to enroll in or pursue" a course, then payment for that course becomes an overpayment; or (2) If any subsequent payments are made pursuant to "erroneous information" given in applying benefits, then those subsequent payments become an overpayment.

It is quite doubtful from this record whether an "overpayment" has been made by the government. Transcripts supplied by the defendant show only that defendant received grades of incomplete in a few courses, and that defendant withdrew from two courses, during the relevant period. It *may* be that defendant "fail[ed] to ... pursue" those courses, but without more information, summary judgment for the plaintiff would be entirely out of order. It is clear, however, that no "erroneous information" has been supplied by the defendant. Plaintiff has failed to show that defendant supplied "erroneous information" in his application for benefits, or otherwise. It is beyond reason or credibility to say that the statute's language means that the VA education program is only for the winners, and that to fail or drop out of a course is the *ex post facto* equivalent of obtaining the original educational help through "erroneous information."

There is also a lack of detail in the "Certificate of Indebtedness" submitted with the complaint. The evidence does not show, for example, how much of the itemized payments were for educational assistance, and how much were for *subsistence* allowances. The record will not support the relief demanded.

## III.

### CONCLUSION

In *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Supreme Court said that Congress wished to prevent "expensive and time consuming litigation" arising from the veterans' benefits program. The Veterans Administration appears to be ignoring that goal. For example, one of plaintiff's briefs, "Supplemental Memorandum in Support of Summary Judgment" at 2–3 (filed Jan. 6, 1984) quotes Department of Veterans Benefits (DVB) Circular 20–76–84 ¶ 4b as stating:

> If an eligible veteran or person withdraws from a course after the institution's drop-add period or receives a nonpunitive grade for that course, and mitigating circumstances are not found, benefits for that course will be terminated effective the first date [of] enrollment or December 1, 1976, whichever is later.

That circular reportedly provides instruction for the implementation of 38 U.S.C. § 1780(a). Plaintiff's attorney represented to the court that the circular shows that the VA has interpreted § 1780(a) to allow recovery of benefits already paid. This court cannot agree with that interpretation. See pp. 805–806, *supra.*

The impression that the VA may be thus oppressively implementing the law is especially disturbing in light of the large number of recent suits filed by the United States against veterans. Current figures are not yet available, but almost half of the civil cases filed in this division the first half of 1983 were suits of that nature. Generally the amounts sought by the government are less than $1,000, although occasionally the amount will be as great as that sought in this case. The court is not aware of any case in which the veteran has been represented by a lawyer. This is the first such case before this judge in which a veteran has contested, in court, the liability alleged by the United States.

If this case is any indication of the status of the many other suits against veterans in this court, then the purpose of Congress to avoid "expensive and time consuming litigation" is being frustrated.

IT IS ORDERED that plaintiff's motion for summary judgment is DENIED.