UNITED STATES of America, Plaintiff,

v.

Robert L. BRANDON, Defendant.

No. C–C–83–580–M.

United States District Court, W.D. North Carolina, Charlotte Division.

Jan. 29, 1985.

Charles R. Brewer, U.S. Atty., Asheville, N.C., for plaintiff.

Edward G. Connette, Harper, Connette & Stovall, Charlotte, N.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McMILLAN, District Judge.

The United States of America, plaintiff, sued Robert L. Brandon in this action to recover $2,532.63 plus interest for alleged overpayments made to him by the Veterans Administration (VA) in educational assistance allowances. The suit is based on 38 U.S.C. §§ 1785(a), 1785(b), 1780(a)(4) and 1780(e).

The case was tried to the court without a jury on November 1, 1984.

## I

### FINDINGS OF FACT

Robert Brandon was enrolled at Central Piedmont Community College (CPCC) in Charlotte, North Carolina, during the spring and summer quarters of 1979 and the fall quarter of 1980. Defendant Brandon received monthly advance educational assistance benefits during that period as a result of his service for three and one-half years as a Marine, and one year in the reserves. He now is a member of the North Carolina National Guard.

During the spring and summer of 1979 and the fall of 1980 at CPCC, defendant received some "nonpunitive grades." This strange phrase is defined by the VA as "grade assigned for pursuit of a course (whether upon completion of the course or at the time of withdrawal from it) which has the effect of excluding the course from any consideration in determining progress toward fulfillment of graduation requirements." Department of Veterans Benefits (DVB) Circular 20–76–84. Under the VA's policy, a veteran could not receive any benefits for a course which he audited or for which he received a "nonpunitive" grade.

As Mr. Brandon was to learn, the VA's policy on "nonpunitive" grades would be very punitive against veterans.

At all times relevant to this suit, CPCC did not give failing grades to students. The only passing grades given were A, B, and C, which gave a student credit toward graduation. The other grades were W (withdrawal), IR (incomplete-repeat), and IM (incomplete-make-up). The grade of IR required a student to repeat the entire course before any credit toward graduation would be given. The grade of IM allowed a student to receive credit for the course upon successful completion of additional work.

In the spring quarter of 1979, defendant enrolled in three courses and did not receive a passing mark in any of them. In

the summer quarter of 1979, he enrolled in three courses and failed to receive a passing grade in one course. In the fall of 1980, defendant enrolled in three courses and received a passing mark for one course.

According to the VA's policy as stated in DVB 20–76–84, defendant was not entitled to benefits paid for those courses in which he received "nonpunitive" grades. The VA interpreted that to mean that defendant was not entitled to benefits for any course in which he did not receive an A, B, or C grade.

The government does not seriously contend that defendant provided "erroneous information" in order to receive benefits, or that he failed to "pursue" his courses. The government's theory is that defendant was not entitled to the benefits he received and must repay them because he received "nonpunitive" grades in certain courses.

In 1978, the VA audited the Veteran Affairs Office at CPCC. As a result, the VA discovered that CPCC was not complying with the regulations contained in the predecessor of DVB–76–84, which had become effective in 1976. Before the audit, CPCC had not been reporting to the VA those veterans who had received "nonpunitive" grades.

After the audit, CPCC agreed to review all records of veterans and apply the regulations in DVB–76–84 to identify and report to the VA those veterans who had received "nonpunitive" grades since the winter of 1977.

In December, 1979, CPCC's Veterans Affairs Office sent a letter to each enrolled veteran explaining the changes in policy that would come from enforcement of DVB–76–84. This letter explained the "nonpunitive" grading policy and warned of possible overpayments that had been made to students in the past. It informed those who received it that there were procedures for consideration of "mitigating circumstances" for "nonpunitive" grades, which could lead to elimination of past overpayments. The letter is difficult to understand, as admitted by Don Ray, a Mecklenburg Veterans Service official then on assignment at CPCC.

Defendant Brandon has no recollection of receiving this letter or discussing it with any veterans at school.

Though the evidence that the letter was mailed may support a finding that defendant received it, the court declines to make a finding that defendant did receive it, and the court declines to find that, if received, it was understood.

John Tripp, the Director of Veterans Affairs and Testing Services at CPCC, had his office review the academic files of veterans. This search identified the "nonpunitive" grades received by defendant in 1979 and 1980. CPCC then informed the VA of these grades.

The VA started sending collection letters. First, the VA sent defendant a letter on November 12, 1980, informing him of a possible overpayment of benefits during the spring and summer quarters of 1979. On April 9, 1981, the VA sent defendant a statement and another letter explaining that he had received $639.26 in overpayments for the fall quarter of 1980. The letter stated that defendant could apply for a waiver of the debt by writing the VA and giving reasons for the waiver. No specific limitation of time to apply for the waiver is mentioned in the letter. However, on the back of the letter, there is a summary of procedural and appeal rights which states that the veteran can appeal the decision "at any time within one year from the date of this letter."

Defendant made no appeal nor did he apply for a waiver of the overpayment that was assessed. The director of veterans affairs at CPCC, John Tripp, testified that he thought that the filing of a suit against a veteran ended any right to a consideration of waiver. Dan Ray, who also worked in the veterans affairs office at CPCC, thought that a waiver could be considered only for one year.

On October 15, 1981, the VA issued a certificate of indebtedness against defendant for $2,532.63 in overpayments—

$1,893.37 for the spring and summer of 1979 and $639.27 for the fall of 1980. There is no breakdown in the letter or elsewhere in the record of how much in benefits was allegedly overpaid for each specific course.

Shortly thereafter, the VA turned the matter over to the United States Attorney. On October 21, 1981, an Assistant United States Attorney sent defendant a demand letter warning that unless payment was made in full within fifteen days, suit would be filed by the government. After Mr. Brandon received this letter, he went to the offices of the United States Attorney to ask about this alleged debt. There he talked with a responsible non-lawyer employee. No mention was made to defendant about any possibility of a waiver of the debt, but he was advised either at the time or by subsequent letter that he could pay off part of the debt by reenrolling in classes and passing some of them. The letter stated that if a veteran does not pass a course, even if he or she attends all classes, the VA will not pay benefits for the class.

There were no further communications between the parties until suit was filed on July 26, 1983.

## II

## CONCLUSIONS OF LAW

### A

THE VA CAN NOT TREAT MONTHLY ADVANCE EDUCATIONAL ASSISTANCE PAYMENTS AS OVERPAYMENTS SIMPLY BECAUSE A VETERAN FAILS TO RECEIVE A PASSING GRADE.

In an order filed May 9, 1984, denying the government's motion for summary judgment, this court has already ruled that pursuant to 38 U.S.C. § 1780(e), the VA can recover advance payments made to a veteran for educational assistance only upon proof that the veteran "fails to enroll in or pursue a course" or provides "erroneous information required to be furnished."

*United States v. Brandon,* 584 F.Supp. 803 (W.D.N.C.1984).

In that decision, this court found that it has the power to examine the validity of the alleged debt owed to the plaintiff despite the alleged bar to such review by 38 U.S.C. § 211(a). The government claimed that this court could only look into the validity of the debt if it ruled for the government. The court rejected this claim and embraced the reasoning in *De Magno v. United States,* 636 F.2d 714, 724–27 (D.C.Cir.1980), that it could review the validity of the alleged debt.

The court finds that the plaintiff can bring this suit despite the requirement of 38 U.S.C. § 3116(a)(2), that no suit may be filed "unless the Administrator has determined ... that such person has failed to respond appropriately to reasonable administrative efforts to collect such indebtedness." Plaintiff asserts that it has made reasonable efforts to collect the debt before filing suit. The VA sent several letters to defendant requesting payment of the alleged overpayment. The VA also sent a certificate of indebtedness setting forth the amount allegedly due and the basis for the alleged debt. After the case was turned over to the attorney, the defendant received a demand letter requesting payment once again before a suit was filed. Prior to the filing of this suit, plaintiff determined that defendant had failed to respond to reasonable efforts to collect the alleged debt. On this point, the court agrees with the plaintiff. Therefore, 38 U.S.C. § 3116 does not bar plaintiff's bringing this suit.

The court previously found that the applicable statute (if there is one) for recovery of the alleged debt is 38 U.S.C. § 1780(e):

If an eligible veteran or eligible person *fails to enroll in or pursue a course* for which an educational assistance or subsistence allowance *advance* payment is made, the amount of *such* payment *and any amount of subsequent payments which, in whole or in part, are due to erroneous information* required to be

furnished under subsection (d)(2) of this section, shall become an overpayment and shall constitute a liability of such veteran or person to the United States and may be recovered, unless waived pursuant to section 3102 of this title from any benefit otherwise due such veteran or person under any law administered by the Veterans' Administration or may be recovered in the same manner as any other debt due to the United States. [Emphasis added.]

■ Under this section, the VA can recover past payments only (1) if there has been a failure "to enroll in or pursue a course" or if (2) "erroneous information" has been provided to the VA. As stated earlier, the government does not contend that the defendant failed to "enroll in or pursue" his courses, nor that he submitted "erroneous information." The government bases its claims solely on the fact that defendant received "nonpunitive" grades.

This court has already rejected the government's claim that 38 U.S.C. § 1780(a)(4) allowed a recovery of payments for courses for which the veteran received "nonpunitive" grades. The court found in its earlier summary judgment opinion that 38 U.S.C. § 1780(a)(4) is prospective only, allowing the VA to refuse to make future payments, but providing no basis for recovery of past benefits.

The only other possibly applicable statute is 38 U.S.C. §§ 1785(a) and (b), which state:

(a) Whenever the Administrator finds that an overpayment has been made to a veteran or eligible person, the amount of such overpayment shall constitute a liability of such veteran or eligible person to the United States.

(b) Whenever the Administrator finds than [sic] an overpayment has been made to a veteran or eligible person as the result of (1) the willful or negligent failure of an educational institution to report, as required under this chapter or chapter 34 or 35 of this title, to the Veterans' Administration excessive absences from a course, or discontinuance or interruption of a course by the veteran or eligible person, or (2) the willful or negligent false certification by an educational institution, the amount of such overpayment shall constitute a liability of the educational institution to the United States.

Section (b) allows the VA to recover certain overpayments from either the veteran or the educational institution. Although CPCC may have been negligent in failing to comply with DVB 20–76–84, the VA has not attempted to hold the institution liable and instead has pursued only the individual veteran. However, the government still cannot recover from the veteran under 38 U.S.C. § 1785. Though Section 1785 allows the VA to recover for an "overpayment," what constitutes an overpayment must be determined by reference to 38 U.S.C. § 1780(e). Section 1780(e) defines what is an overpayment in the case of advance monthly educational assistance and subsistence allowance payments, and Section 1785 must be read in light of this definition. Otherwise, the VA could simply declare an overpayment under Section 1785 and avoid the specific applicable requirements of Section 1780(e). As stated above, the plaintiff has not shown any overpayment to defendant that can be recovered under 38 U.S.C. § 1780(e). Plaintiff cannot recover under Section 1785 alone.

The government can recover from defendant, if at all, only pursuant to 38 U.S.C. § 1780(e). It does not contend seriously, and does not show, that it can meet the requirements of that statute. Thus, it cannot recover from the veteran for the alleged overpayments.

B

THERE APPEAR TO BEEN PROCEDURAL DEFICIENCIES THAT DEPRIVED THE VETERAN OF HIS RIGHT TO HAVE THE ALLEGED DEBT CONSIDERED FOR WAIVER; HOWEVER, THE COURT NEED NOT REACH THIS ISSUE.

Defendant contends that the government cannot recover for the alleged debt because it deprived him of his right to have the debt considered for a two-year waiver by the VA. 38 U.S.C. § 3102. (At all relevant times, the waiver period was for two years. It was amended in 1982 to provide for waiver consideration only for 180 days.)

A review of the statute, regulations, and letters sent to defendant reveals a Byzantine system that confuses even the most determined reader.

Section 3102 provided for a waiver period of two years. The April 9, 1981, letter to defendant stated that consideration for a waiver was available, but did not mention any time limit. However, it did state that he had a right to appeal the decision for one year. Federal regulations state that a veteran can have mitigating circumstances considered for a withdrawal or nonpunitive grade for a one-year period. 38 C.F.R. § 21.4136(k)(ii). The December, 1979, letter sent by CPCC to all enrolled veterans advised them of a right to consideration of waiver, but says that the veteran should present mitigating circumstances to the CPCC office by January 23, 1980, or when the VA contacts the veteran. The officials administering veterans benefits at CPCC were unaware of the statutory two-year period. At trial, John Tripp testified that he thought that the VA would not consider a waiver requested after suit is filed. Dan Ray testified that he thought the waiver period lasted only one year. Whether or not this is accurate, it is significant that these people who ran the office at CPCC for veteran affairs were not aware of the statutory two-year period.

Defendant argues that the government has adopted a regulation (38 C.F.R. § 21.4136(k)(ii)) allowing consideration for one year that is inconsistent with the statutory two-year period. The regulation is ambiguous, but one possible reading is that it applies only to waiver of denial of *future benefits* to be paid:

The Veterans Administration *will not pay* any benefits to a veteran ... unless (i) There are mitigating circumstances,

and (ii) The veteran submits the circumstances to the Veterans Administration within one year ... (Emphasis added). Section 3102 allows two years for consideration of a waiver of a *recovery* of an overpayment. Although the regulation and statute are not clear, this reading would avoid inconsistency.

Defendant Brandon may not have been allowed the full waiver period provided for by statute. The VA did advise him by letter of his right to have his case considered for a waiver, but Brandon was never given a clear statement of how long that right would last, and there was confusion even among the administrators as to how long the period for consideration for waiver would last. However, it is not clear whether this uncertainty over the waiver period would be a violation of the due process clause.

Despite the foregoing decision, the court need not decide whether defendant's due process rights were violated by notification of his right to consideration for waiver at a time when he was either misled as to the period or had not been notified of the correct time limitation on the waiver. The court has determined that the government cannot recover from the veteran on the merits of the case. Therefore, the court will not rule on the due process claims made by the veteran.

III

CONCLUSION

If the government can recover at all, that recovery must be based on 38 U.S.C. § 1780(e). The government has not seriously contended that it can recover under that statute, but has requested that the court reconsider its conclusions previously made in denying the government's motion for summary judgment. The court declines to do so, and finds that plaintiff cannot recover from defendant in this case.

It is disturbing that the VA has taken the position that it can recover benefits paid to veterans with respect to courses in which they have not received passing

grades. This in effect forces the veterans to gamble on their education. If they pass their courses, they win and can keep the benefits already paid. If they do not pass the courses and receive "nonpunitive" grades, which automatically occurs at CPCC, then they lose, and the VA attempts to recover the benefits already paid. This procedure by the VA is not allowed by the laws governing recovery of overpayments.

This is the first case before this court in which a veteran has challenged the VA's collection of an alleged debt. The court has estimated that almost half of the civil cases filed in this division in the first half of 1983 were suits of this nature in which the government sought to collect amounts generally less than $1,000. Almost all of the cases resulted in consent judgments in which the veterans agreed to pay back the alleged overpayment. The court can only wonder how many of those suits were based on the same interpretation of the law by the VA that has been held invalid in this case.

### ORDER

Findings of fact and conclusions of law have been entered.

However, the question of attorney's fees and costs remains to be determined.

The defendant veteran has requested that the court allow recovery from the government of reasonable attorney fees and costs. Under the Equal Access to Justice Act (28 U.S.C. § 2412(d)(1)(A)), fees and costs should be awarded to a party prevailing against the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." The court will defer decision on the award of fees and costs until further word from the parties. Defendant is required by 28 U.S.C. § 2412(d)(1)(B) to file a petition within thirty days, along with a showing that he is the prevailing party, and that the government's position was not substantially justified. The United States shall file its response to that petition within thirty days after it has been received.

Final judgment will be entered after the fee question has been decided.