**UNITED STATES of America,**

v.

**Stephen A. GARRAHAN, Defendant.**

**No. GCA 84–0119–MMP.**

United States District Court,
N.D. Florida,
Gainesville Division.

June 25, 1985.

N. Sherrill Newton, Office of Dist. Counsel, Bay Pines, Fla., for the U.S.

Stephen A. Garrahan, defendant, pro se.

PAUL, District Judge.

ORDER

The United States brought this action to recover an overpayment of $1,022.27, plus costs and interest, received by the defendant from the Veterans' Administration. This sum represents educational benefits paid from January 9, 1979, through March 31, 1979, to which defendant is allegedly not entitled because he received zero credit hours for that term and failed to submit any mitigating circumstances to the VA that could result in a waiver of liability for his indebtedness. The case is now before the Court on a motion for summary judgment filed by the United States. For the reasons stated below, this motion is granted.

The defendant, Stephen A. Garrahan, enrolled in Santa Fe Community College to pursue an AA degree. The school submitted an "Enrollment Certification" form to the VA certifying that the defendant would be attending three-quarter time (9 credit hours) for the period January 9, 1979, through August 16, 1979. Based on this information, the VA awarded educational benefits at the three-quarter time rate to be paid monthly. Defendant subsequently withdrew from his classes on three separate occasions: January 22, January 25, and April 20—the last day of the term. Defendant was assigned a non-punitive grade for the term, a W, which is neither a passing or failing grade and is not used in computing graduation requirements. Following each notice sent by the school of the change in defendant's status, the VA sent letters to the defendant informing him that, since the law prohibits payment for a course from which the student withdraws, it is important to notify the VA of the reasons for the change. The letters also state that if no reasons are furnished, benefits will be reduced or terminated effective the first day of that term. There is no evidence any reasons were provided by the defendant. The VA then generated a series of demand letters notifying the defendant that a retroactive reduction in benefits

created an overpayment which resulted in a debt that must be repaid. These letters also informed the defendant of his right to have this debt considered for waiver. There is no evidence defendant requested a waiver of liability. The United States then initiated this action to recover the educational benefits paid for courses from which the defendant withdrew.

There currently exists conflicting case law on the issue of whether the VA is statutorily entitled to retrieve educational benefits previously expended to a veteran on the grounds that the veteran did not receive academic credit for a course. In *United States v. Brandon,* 584 F.Supp. 803 (W.D.N.C.1984), the Court held that a veteran was not required to repay benefits he had already received. In that case the United States argued two statutory bases for recovery of these funds.

The first was 38 U.S.C. § 1780(e), the Recovery of Erroneous Payment:

(e) If an eligible veteran or eligible person fails to enroll in or pursue a course for which an educational assistance or subsistence allowance advance payment is made, the amount of such payment and any amount of subsequent payments which, in whole or part, are due to erroneous information required to be furnished under subsection (d)(2) of this section, shall become an overpayment and shall constitute a liability of such veteran or person to the United States and may be recovered, unless waived pursuant to section 3102 of this title, from any benefit otherwise due such veteran or person under any law administered by the Veterans' Administration or may be recovered in the same manner as any other debt due the United States.

The court in *Brandon* found that 1780(e) is clearly a retrospective directive in that it contemplates recovery of payments already made. However the court held an advance payment only becomes an overpayment subject to recovery in two situations: 1) if a veteran fails to enroll in or pursue a course, and 2) if a subsequent payment is disbursed due to erroneous information given in applying for benefits. *Brandon* at 806.

The United States also argued this issue was governed by 38 U.S.C. § 1780(a)(4):

(a) Payment of educational assistance or subsistence allowances to eligible veterans or eligible persons pursuing a program of education or training ... in an educational institution ... shall be paid as provided in this section.... Such payment shall be paid only for the period of the veterans' or persons' enrollment in, and pursuit of, such program, *but no amount shall be paid —*

. . . . .

(4) to any eligible veteran or person for a course for which the grade assigned is not used in computing the requirements for graduation *including a course from which the student withdraws* unless the Administrator finds there are mitigating circumstances ...

(Emphasis added)

The court in *Brandon* construes this section as a prospective directive. "No amount shall be paid" is interpreted to deny future benefits. The mention of withdrawals, which suggests a retrospective evaluation of educational benefits, is applicable only in deciding whether to pay benefits in the future. *Brandon* at 806. Based on this analysis, the court denied the United States' motion for summary judgment and later ruled the VA could not recover benefits paid simply because a veteran did not receive academic credit. *United States v. Brandon,* 601 F.Supp. 795 (W.D.N.C. 1985).

To this court's knowledge, *Brandon* stands alone in denying the government the right to recover these benefits. The only other case in accord was *United States v. Steinberg,* 553 F.Supp. 184 (D.C. Mass.1982), but that court later, in an unpublished order, reversed itself on a motion for rehearing and granted summary judgment for the United States.

In *United States v. Oakley*, 744 F.2d 1553 (11th Cir.1984), the appellate court affirmed an order granting the United States' motion for summary judgment in an action to collect an overpayment of educational benefits. The overpayment in *Oakley*, as in the case at bar, was created by the defendant's reduction of hours. The defendant in *Oakley* did not submit a request for waiver of recovery of this overpayment, therefore the VA was authorized to institute legal proceedings for recovery of the debt. *Oakley* at 1556. Similarly, in *United States v. Kirby*, 522 F.Supp. 424, 425 (N.D.Ga.1981), the court found Kirby liable to repay benefits for courses he never completed and granted the United States' motion for summary judgment. Kirby argued that he could not finish the term because of illness and that the involuntary nature of his failure to complete the courses coupled with the fact that he never formally withdrew from his classes precluded his indebtedness to the United States within the meaning of 38 U.S.C. § 1780(e). The Court found Kirby liable pursuant to 38 U.S.C. §§ 1780(a)(4) and (e). He did not receive a grade that counted toward graduation, and the reason for failing to complete the course was irrelevant to the issue of his liability to the United States. *Kirby* at 425. The Court reasoned that *Kirby* could have applied for a waiver of this liability under 38 U.S.C. § 1780(e) but he did not do so. The court would not allow Kirby to sidestep this procedure by bringing the matter of his liability before the court. *Kirby* at 425. The court also noted it would have granted summary judgment for the United States on the basis of § 1780(e) alone. *Kirby* at 425, fn. 2. *See also United States v. Ramsey*, 539 F.Supp. 1062 (E.D.Tenn.N.D.1982).

The interpretation of section 1780(a)(4) and (e) that appears to be most commonly applied is summarized in *United States v. Rowin*, 550 F.Supp. 643 (W.D.N.Y.1982) as follows:

> "Section 1780(a)(4) of Title 38 provides that no educational benefits shall be paid for a course from which the student withdraws unless the Administrator finds that there are mitigating circumstances. In the absence of mitigating circumstances, payments that are received constitute overpayments. Section 1780(e) further provides that erroneously paid educational allowances may be recovered as any other debt owed the government unless waived pursuant to 38 U.S.C. § 3102 ..."

*Rowin* at 645. A careful review of the legislative history of 38 U.S.C. § 1780(a)(4) leads this Court to concur with the statutory construction set forth in *Rowin, supra*.

One of the purposes of the Veterans' Education and Employment Assistance Act of 1976 (P.L. 94–502) was to curb abuses and overpayments inherent in the VA education program. Among the problems discussed in the legislative history are the following:

> "The most significant development, however, has been the uncovering of problems and abuses with respect to veterans attending degree granting institutions. In the past several years, substantial VA overpayments have been established. These overpayments often have been the result of lack of timely notification by the veteran and/or the school, of changes in training status, or of slow administrative processing of these changes by the Veterans' Administration itself.

> . . . . .

> "Apart from these administrative problems ... is mounting evidence that many veterans are enrolling in courses ..., not to pursue an education or training program, but solely to receive VA monthly assistance allowances."

U.S.Code Cong. & Ad.News, 94th Cong.2d Sess. (Vol 5 1976) 5241 at 5269.

The legislative history further notes that changing educational practices have lead some schools to turn increasingly to nonpunitive grading and liberalized withdrawal policies. This trend, coupled with liberalized VA administrative policies that ensure timely payments, has resulted in substan-

tial overpayments in cases of discontinued schooling or reduced training time. The committee expressed a duty to prescribe procedures to curb actual and potential abuses and to ensure that Federal tax dollars are spent in the manner intended by law. These benefits are "specially predicated upon serious pursuit of educational or vocational objectives by veterans and are not intended as a gratuitous income supplement program". *Id.* at 5271.

Title 38 was strengthened and clarified to ensure that educational assistance benefits are paid only to those veterans in serious pursuit of a course of education. One step was the addition of 38 U.S.C. § 1780(a)(4) prohibiting payment for courses in which the grade assigned is not used in computing graduation requirements, including a course from which the student withdraws, unless the Administrator finds mitigating circumstances. This section was targeted to curb abuses afforded by the educational community's increasing permissiveness of non-punitive grading and withdrawals, which allow a veteran to enroll in classes, withdraw on the last day without penalty, and repeat the process the following semester. Although it may appear harsh to allow recovery simply for failure to take a course to a final grade, the administrator is authorized to waive liability on a finding of mitigating circumstances. This waiver authority is to be exercised "with compassion and with an understanding of the domestic difficulties and the problems often encountered by educationally disadvantaged veterans making a serious attempt to obtain an education". U.S.Code Cong. & Ad.News, 94th Cong.2d Sess. (Vol. 5 1976) at 5342.

The area of VA educational assistance benefits was revisited by Congress in 1980. Subcommittee field hearings revealed the VA's continuing problems of educational overpayments and recovering defaulted education loans. The legislative history of P.L. 96–466 [U.S.Code Cong. & Ad.News (Vol. 4, 1980)] concluded that the VA is not sufficiently aggressive in collecting debts. Collection methods at that time were expensive and slow. Consequently there were many educational assistance overpayment accounts for which active collection action was no longer being taken. Unless these veterans applied for future benefits from which the debt could be offset, there was little hope of future collection. The VA's failure to collect these debts is unfair to veterans who do repay their overpayments and to taxpayers who bear the cost. One result of this finding was the addition of 38 U.S.C. § 1785(a) clearly stating that when the administrator finds an overpayment has been made for a veteran, that amount constitutes a liability of such veteran. § 1785(c) further states this overpayment may be recovered in the same manner as any other debt due the United States. 38 U.S.C. § 3116 was also added authorizing attorneys employed by the VA to exercise the right of the United States to bring suit to recover any indebtedness owed by virtue of a person's participation in a benefits program administered by the VA. This court arrives at the seemingly inescapable conclusion that the legislative intent is to allow the United States to recover funds disbursed to veterans for classes when no academic credit is achieved.

The government also has a long standing common law right to bring suit to recover funds erroneously paid from the public treasury. *United States v. Wurts,* 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938); *Wisconsin Central Railroad v. United States,* 164 U.S. 190, 17 S.Ct. 45, 41 L.Ed. 399 (1896); *Mount Sinai Hospital of Greater Miami, Inc., v. Weinberger,* 517 F.2d 329 (5th Cir.1975). In *United States v. Macioci,* 345 F.Supp. 325 (D.C.R.I.1972) the government sought to recover in excess of nineteen thousand dollars disbursed in VA compensation benefits after Mr. Macioci was admitted to a Veterans' Home where he received free care. The payment of these benefits was in violation of 38 U.S.C. § 3203(b)(2). Although the court found no express statutory authority to recover these funds, it held that no statute is required to authorize this common law right

and granted summary judgment for the government.

This court concludes that, as a matter of law, the United States is entitled to institute legal proceedings to recover VA educational benefits expended on courses in which the grade assigned is not used to compute graduation requirements. In the instant case there is no dispute that Stephen A. Garrahan withdrew from the courses he had enrolled in and received no credit for graduation. There is no evidence he submitted mitigating circumstances or requested a waiver of liability. In light of the affidavits and supporting attachments filed by the United States, this Court can find no genuine dispute of any material fact.

Accordingly, it is ORDERED:

1. The United States' motion for summary judgment (doc 6) is GRANTED.

2. Judgment enter in favor of the United States in the amount of the principal sum of $1,022.27, plus prejudgment interest at a rate of 15.05% per annum accruing from August 2, 1983, until entry of judgment, plus administrative costs.

3. This judgment shall bear interest at a rate of 7.70% from the date of entry.