Edward R. **FOUNTAIN**

v.

The **UNITED STATES** and Redevelopment Land Agency.

No. 314–69.

United States Court of Claims.

June 12, 1970.

Clement Theodore Cooper, Washington, D. C., attorney of record for plaintiff.

Jonathan U. Burdick, with whom was Asst. Atty. Gen., Shiro Kashiwa, for defendants.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S MOTION TO DISMISS

PER CURIAM:

This action is before us on petition and motion to dismiss. The plaintiff alleges (including his allegations in opposition to the motion) that he was the sole owner of a business concern known as the Tropicana Cafe and Lounge, situated at 113 H Street, NW., Washington, D. C., that in May 1966, defendant's agents advised him he was in an urban renewal area and promised him $15,000 to relocate, that he did arrange to relocate and made various business arrangements in preparation for it, that plaintiff notified defendant he was ready, willing and able to relocate, that in December 1966, defendant refused to pay plaintiff and instead paid the relocation costs to one Thorpe, all to plaintiff's great financial loss. The articles to be relocated consisted of furniture and fixtures covered in a sale agreement which was a part of plaintiff's lease on his Cafe premises. Thorpe was the landlord. Plaintiff was to pay Thorpe for the furniture and fixtures an unpaid balance of $3,000 in monthly installments of $50 per month, bearing interest at six percent. The lease was dated March 1965, so it is clear that all installments were not yet paid or due in December 1966. The sale was stated in the lease to be on a conditional sale basis and title was to remain in the vendor until the purchase price was fully paid. It is obvious from plaintiff's recitals that defendant paid Thorpe to relocate the furniture and fixtures and refused to pay plaintiff because defendant regarded Thorpe and not plaintiff as their owner on the relocation date, but except as stated, the foundation for its belief is not before us. Defendant has not supported its motion with any documents or evidence to show the reason for the official

choice that evidently was made. A majority of the court, however, is of the opinion that a plaintiff cannot furnish so obvious an explanation for an official decision and expect the court to speculate that some other unrevealed basis may have been the true one.

■ The District of Columbia Redevelopment Land Agency is the alleged promissor and is improperly named as a codefendant in the petition. But defendant assures us that it is a Federal agency, not a local one, and thus its contracts would be included among contracts of the United States enforceable under the Tucker Act, 28 U.S.C. § 1491, in suits against the United States. It cites Goddard v. District of Columbia Redevelopment Land Agency, 109 U.S. App.D.C. 304, 287 F.2d 343, 345 (1961). We assume *arguendo* that this is so for the purposes of our decision, since, as will appear, we consider that jurisdiction has been withheld from us otherwise. Thus the inartistic naming of the Agency as co-defendant is of no importance.

■ Defendant's original motion relied mainly on the allegations sounding in tort with which the petition and the papers in opposition to the motion are replete. We do not sustain the motion on this ground. If contractual relations exist, the fact that the alleged breach is also tortious does not foreclose Tucker Act jurisdiction. Burtt v. United States, 176 Ct.Cl. 310, 314 (1966).

The provision for relocation payments, 42 U.S.C. § 3074, appears to be subject to 42 U.S.C. § 1465(e) (Supp. IV 1965–68) implemented by 24 C.F.R. § 3.104(c) (1966), by which an administrative decision as to eligibility for relocation assistance "shall be final and conclusive for any purposes and not subject to redetermination by any court or any other officer." In Merge v. Troussi, 394 F.2d 79 (3d Cir.1968), that court held that this language barred judicial review of an administrative decision as to eligibility even to determine if it was arbitrary and capricious. In Joslin Mfg. Co. v.

City of Providence, 262 U.S. 668, 43 S. Ct. 684, 67 L.Ed. 1167 (1923), it is held that payment of a condemnee's removal expenses, though more than a mere gratuity, is beyond the Fifth Amendment guarantee of "just compensation," so it would seem that the Congress would have power to bar the courts from participating in the award of removal expenses, and that, as to the issue of eligibility at any rate, it has done so here. We are aware of decisions such as Tracy v. Gleason, 126 U.S.App.D.C. 415, 379 F.2d 469 (1967), giving other finality language its literal scope and no more, but we do not think any unsympathetic interpretation of the present statute can change the result here because the instant administrative decision as to eligibility appears to be exactly of the kind the Congress meant to keep out of the courts. United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), warns us to respect finality language in cases other than of a flagrant constitutional violation, a standard we have subsequently sought to apply as a benchmark for the scope of our judicial review of court-martial sentences in Gallagher v. United States, 423 F.2d 1371, 191 Ct.Cl. —— (decided April 17, 1970). It is to be noted that plaintiff here does not even allege that Thorpe was not the owner, or that the Agency erred in treating him as such. There is also no allegation of a lack of due process by the Agency in making its determination.

■ This jurisdictional point we first raised of our own motion, as it was our duty to do. *See* Todd v. United States, 292 F.2d 841, 844, 155 Ct.Cl. 87, 93 (1961). But defendant now shows it thinks we were right in raising it.

■ Plaintiff's theory seems to be that the oral promises allegedly made to him have somehow a legal being of their own apart from the statute and regulation the involved officials were supposed to be administering. This must fail. The rather general commitments alleged must be construed as promises to pay relocation expenses to plaintiff if and to

the extent that he qualified himself to receive them. Any promises that went further were beyond the scope of the officials' authority and therefore unenforceable. *Utah Power & Light Co. v. United States,* 243 U.S. 389, 409, 37 S. Ct. 387, 61 L.Ed. 791 (1917). Thus no oral promises could relieve plaintiff of his continuing obligation to satisfy the Agency as to his eligibility, a matter which was within its unreviewable discretion. If the Agency held that eligibility turned on the situation at the time of moving, not earlier, this would seem a fair construction of the statute. Taking plaintiff's allegations as true, it is unnatural, and an exercise of the imagination only, to say the Agency held him eligible and then changed its official mind, and plaintiff does not so allege.

We think, however, that the dissent of some of our number is unsurprising in light of defendant's omission to inform us from the official records what determination or determinations were actually made and our lack of judicial knowledge of the practices and policies of the Agency involved, which is before us in litigation for the first time, we believe.

Therefore, the motion to dismiss must be allowed, and the petition is dismissed.

DAVIS, Judge (dissenting):

It is crucial to remember that this case comes before us on defendant's motion to dismiss the petition, and that defendant has not given us a single document, official paper, or affidavit to support its bare legal argument. Plaintiff, on the other hand, has furnished several documents and has somewhat expanded his petition by additional allegations in his papers opposing the defendant's motion. In that posture of the case, we should, in my view, generously construe the petition, as supplemented by the assertions in plaintiff's opposition, to see whether any claim is set forth which warrants further investigation. Plaintiff has not moved for judgment and we are not asked to dispose of the case in his favor. All that we are required to

decide is whether there is any possibility at all that he may be able to make a case for recovery.

Plaintiff alleges that the Redevelopment Land Agency dealt with him in the first part of 1966, inducing him to make arrangements to relocate, and then turned around in December 1966, cut off further relations with him, and dealt with Thorpe, his landlord at the old premises. The court thinks it knows why this change occurred, but at this stage the defendant has not given us any basis on which to decide or even speculate, and the plaintiff's own exhibits do not supply any answer. To me, the reason is not at all obvious, and only pure guesses can be made. I would like to be enlightened by a trial or other further proceeding. Plaintiff, not Thorpe, was carrying on the business, and plaintiff asserts that he had an interest in the furniture and fixtures. It is hard for me to believe that, if that was so, the Land Agency treated Thorpe as the only owner, either of the tangibles or of the business. It is more consistent (or, at the least, just as consistent) with the plaintiff's allegations that the Agency first considered him eligible and then changed its mind, for some as yet unexplained reason. I can conjure up explanations different from those of the court, but the important thing at this stage is not for us to speculate but to try to get the facts.

The "finality provision" which the court invokes, 42 U.S.C. § 1465(e), is not a bar at this point. In the first place, the controlling regulations of the Department of Housing and Urban Development, 24 C.F.R. § 3.104(c), as I read them, do not accord finality unless the eligibility determination has been properly made and issued. One of the regulations' requirements is that the Agency "maintain in its files complete and proper documentation supporting the determination" of eligibility or non-eligibility. In my understanding, no determination of eligibility is proper (or can be accorded finality) if there has not been compliance with this specific provi-

sion. But in this case we do not even know, as yet, whether (i) any determination of eligibility or noneligibility was made as to Thorpe, or (ii) as to plaintiff, or (iii) whether the Agency's files contain the required "complete and proper documentation" as to either determination. The defendant has not even certified to us that a proper determination of eligibility was made as to anyone involved in this matter.

Second, I would construe these finality clauses—in the same way as the Veterans Administration's "finality" clause (38 U.S.C. § 211(a)) has been interpreted by one court, see Tracy v. Gleason, 126 U.S.App.D.C. 415, 379 F.2d 469 (1967), but see Di Silvestro v. United States, 405 F.2d 150, 153–154, (C.A.2 1968)—as not applying to an attempt by the Agency to undo a determination of eligibility which has already been made. That may be the case here, under the plaintiff's as yet undenied (and untested) allegations. Moreover, we have held that, notwithstanding the finality provisions of the Civil Service Retirement Act, Section 16(c), 70 Stat. 758 (1956); 5 U.S.C. § 2266(c) (1964), a court can set aside the Commission's determination in an involuntary disability retirement case where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination. *See* Gaines v. United States, 158 Ct.Cl. 497, 501–502 (1962), cert. denied, 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962).

As for the representations made by Agency people, I cannot at this stage say they were unauthorized since defendant has not favored us with any pertinent material on the representatives' authority. And if there was no proper determination of eligibility, which is also a possibility, then the "finality" provisions would be inapplicable, and there might be a basis for implying a contractual commitment from the Agency's dealings with plaintiff (which seem to have been strong and definite enough to cause him to undertake substantial commitments as to relocating his business).

The burden of my dissent, as I hope appears by now, is that this is no case in which to dismiss the petition on its face. Rather, it is a case which we should not dispose of until we know more about what actually happened, either through a trial or the furnishing of pertinent documentary material.

DURFEE and SKELTON, JJ., join in the foregoing dissenting opinion.