**In re CASEY CORPORATION, Debtor.**

**CASEY CORPORATION, Plaintiff,**

v.

**BIG BLUE RIVER CONSERVANCY DISTRICT, New Castle, Indiana, United States Department of Agriculture, Soil Conservation Service, Defendants.**

**No. IP 83–1378–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Feb. 13, 1985.

Kightlinger, Young, Gray & DeTrude, Indianapolis, Ind., for plaintiff.

Charles Goodloe, Jr., Asst. U.S. Atty., Indianapolis, Ind., for defendant Soil Conservation Service.

## ORDER

NOLAND, District Judge.

This cause is before the Court upon the Motion to Transfer filed by the defendant Soil Conservation Service of the United States Department of Agriculture ("SCS"). In said motion the SCS moved the Court to transfer the above-captioned case to the United States Claims Court, or, in the alternative, renewed both its motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim upon which relief may be granted, filed pursuant to Fed.R.Civ.P. 12(b)(1) and (6), and its motion for judgment on the pleadings, apparently filed pursuant to Fed.R.Civ.P. 12(c). This Court has treated the Rule 12(b)(6) and (c) motions as ones for summary judgment as explained in its order of November 2, 1984.

The Court, having considered the motions for dismissal based on lack of subject

matter jurisdiction and for transfer, having considered the memoranda filed in support thereof and in opposition thereto, having held oral argument, and being duly advised in the premises, hereby DENIES said motions.

The Court, having considered the motions for summary judgment together with the memoranda and materials filed in support thereof and in opposition thereto, having held oral argument, and being duly advised in the premises, finds that a genuine issue of material fact does not exist and that the SCS is entitled to judgment as a matter of law, and hereby GRANTS said motions for summary judgment.

IT IS SO ORDERED.

## MEMORANDUM ENTRY

### I.

This case originated in the bankruptcy court as a case related to Casey Corporation's ("Casey's") Chapter 11 proceedings and was reassigned to this Court on September 9, 1983 pursuant to Rule (C)(2) of the Modification of the Emergency Resolution of December 3, 1981. The case involves a contractual dispute whereby Casey is suing Big Blue River Conservancy District ("Big Blue") and the Soil Conservation Service of the United States Department of Agriculture ("SCS"). Casey contracted to construct a dam and reservoir for Big Blue in Henry County, Indiana as part of a construction project partially funded by the United States. The SCS and Big Blue entered into a separate contract whereby the SCS would provide funds for the project. Although several claims are involved, the major dispute concerns the method for determining the amount of payment for movement of dirt.

This cause is before the Court upon the Motion to Transfer filed by SCS on May 4, 1984. In said motion the SCS moved the Court to transfer this case to the United States Claims Court, or in the alternative, renewed a motion to dismiss and a motion for judgment on the pleadings made earlier. Pursuant to Fed.R.Civ.P. 12(c), the SCS moved for judgment on the pleadings in July of 1982, which motion was treated as a motion for summary judgment and denied by the bankruptcy judge in July of 1982. *In re Casey*, No. IP 81–2925–RA, Adv.Proc. No. 82–127 (Bankr.S.D.Ind. 11/3/82). Pursuant to Fed.R.Civ.P. 12(b)(1) and (6), the SCS moved for dismissal on August 12, 1983, which motion has not yet been ruled on.

The SCS has made several motions challenging the Court's jurisdiction over the claim. First, the SCS asserts that the United States Claims Court has exclusive jurisdiction of claims against the United States and moves this Court to transfer the case to the Claims Court. Second, the SCS moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(1), claiming that the district court does not have jurisdiction over bankruptcy related matters because the Supreme Court, in *Northern Pipeline v. Marathon Pipe Line*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), struck down the broad grant of bankruptcy jurisdiction.

The SCS also made several motions relating to the merits of the case. The SCS moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), or in the alternative, moved for dismissal for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6), claiming that Casey has no claim against the SCS because there was no contract between Casey and the SCS. The motions have been treated as motions for summary judgment as explained in this Court's order of November 2, 1984.

### II.

■ The district court has jurisdiction over this claim pursuant to 28 U.S.C. § 1471 even though 28 U.S.C. §§ 1346(a)(2) and 1491 grant the United States Claims Court exclusive jurisdiction to render judgment upon any claim against the United States for $10,000 or more based upon an implied or express contract. § 1471 provides that

(b) [n]otwithstanding any Act of Congress that confers exclusive jurisdiction

on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

This case is a civil proceeding arising in or related to a case under Title 11. § 1471 takes precedence over §§ 1346(a)(2) and 1491 because of the "notwithstanding any Act of Congress" clause in § 1471. Although the SCS has cited many cases where a case against the U.S. could only be brought in the Claims Court, none of those cases arose in or were related to cases under Title 11. *See Estate of Watson v. Blumenthal,* 586 F.2d 925 (2d Cir.1978); *American Science and Engineering, Inc. v. Califano,* 571 F.2d 58 (1st Cir.1978); *Atkins v. U.S.,* 556 F.2d 1028, 214 Ct.Cl. 186 (1977) *cert. denied,* 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751; *Int'l. Engineering Co. of A-T-O v. Richardson,* 512 F.2d 573 (D.C.Cir.1975). The SCS has not produced even one case holding that the clear language in § 1471 should not be followed. This Court holds that it has jurisdiction under 28 U.S.C. § 1471 and denies the SCS's motion to transfer this action to the Claims Court.

■ Second, the SCS moves for dismissal claiming that the Court does not have jurisdiction because the Supreme Court, in *Northern Pipeline v. Marathon Pipe Line,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), struck down the broad grant of bankruptcy subject matter jurisdiction given in 28 U.S.C. § 1471. The SCS is reading the decision in *Northern Pipeline* too broadly. The decision withdrew jurisdiction from the bankruptcy judges, not from the district courts sitting as bankruptcy courts. Neither the holding nor the rationale of *Northern Pipeline* supports the SCS's position.

The specific holding of *Northern Pipeline* is that Congress cannot grant jurisdiction of Art. III cases to bankruptcy courts because they are Art. I, not Art. III, courts. The unconstitutionality was not the breadth of the jurisdictional grant, as the SCS seems to argue, but to whom the jurisdiction was granted. 28 U.S.C. § 1471(b) is not unconstitutional under *Northern Pipeline* because jurisdiction over Art. III cases is granted to the district courts, which are Art. III, not Art. I, courts. *Northern Pipeline* does not affect the § 1471(b) grant of bankruptcy subject-matter jurisdiction to the district courts. *Matter of United Grocers Corp.,* 30 B.R. 46, 48 (D.N.J.1983); *Otero Mills v. Security Bank & Trust,* 28 B.R. 386, 387-88 (D.N.Mex.1983). The SCS has not cited any cases contradicting this position.

### III.

The SCS addressed the merits of the case in its motion for judgment on the pleadings (now treated as a motion for summary judgment), claiming that Casey has no contractual claim against the SCS because Casey and the SCS did not enter into a contract. Both Casey and the SCS agree that the U.S. is not liable to a contractor hired by a local authority just because there is a contract between the U.S. and the local authority, pursuant to which contract the U.S. provides funds and requires that certain standards be met. *D.R. Smalley & Sons, Inc. v. U.S.,* 372 F.2d 505, 178 Ct.Cl. 593 (1967), *cert. denied,* 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (The U.S. was not liable to a contractor where the U.S. provided 90% of the funding for a public highway and required that certain standards be met.). Additionally, Casey admits that it did not enter a written contract with the SCS.

Casey argues that it can recover under at least one of the following two contractual theories: 1) there was an implied contract between Casey and the SCS; and/or 2) the SCS and Big Blue were involved in a joint venture, so the SCS is responsible for the contract between Big Blue and Casey.[1]

---

1. The third possible contractual theory under which Casey might be able to claim relief is that Casey was a third-party beneficiary to the con-

tract between Big Blue and the SCS. Although the bankruptcy judge said there was a genuine issue of material fact concerning Casey's rights

The Court holds that the SCS is not liable to Casey under any of the above-mentioned theories and that SUMMARY JUDGMENT shall be entered in favor of the SCS.

The bankruptcy judge, in his order of November 3, 1982, denied a similar motion for summary judgment. The bankruptcy judge inadvertently made it difficult for this Court to follow his Entry because he did not elaborate his reasoning for denying summary judgment. The Entry contains only the following:

4. On the issue of whether there exists a colorable claim against the USDA Soil Conversation Service, the Court finds that, at the very least, there exist genuine questions of material fact.

a. The evidence adduced strongly suggests that Casey Corporation may be a third party beneficiary to various provisions of the Project Agreement between the Defendants (USA–SCS Exhibit B).

b. The evidence reasonably suggests that the defendants acted in joint venture on the Project, have a community of interest in the object and purpose of the undertaking, a right to direct and govern the conduct of the other, and an express or implied contract to that effect.

c. Additionally, and alternatively, the evidence clearly establishes extensive, detailed and virtually day-to-day supervision by the Government. The evidence shows that this was *not*, in fact, a situation wherein the Government performed merely regulatory responsibilities and rendered merely technical assistance to a grantee within the context of a mere grantor-grantee relation.

The Court disagrees with the earlier ruling of the bankruptcy judge for the reasons cited herein. This Court hesitates to change the law of this case, but sees no reason to continue the case against the SCS when the law is clearly against Casey and in favor of the SCS.

### A.

■ Casey's first contractual theory is that representations made to Casey (and its agents) by Mr. Shelton Dynes, an employee of the SCS who was on the construction site daily, formed an implied contract between Casey and the SCS. This theory does not support a claim for relief because "[t]he United States is not bound by the unauthorized acts of its agents." *Housing Corp. of America v. U.S.*, 468 F.2d 922, 925, 199 Ct.Cl. 705 (1972) (Plaintiff did construction work for local housing authority, which received some money from the United States. The Court of Claims entered summary judgment for the United States even though there was a dispute as to the amount of involvement of U.S. representatives at the construction site.).

Dynes did not have authority to bind the SCS contractually nor to run the project. The Cooperative Agreements Manual (Exhibit D attached to Government's Reply to Casey Corporation's Brief in Opposition to the Motion for Judgment on the Pleadings, filed October 22, 1982) describes the duties of SCS agents working on watershed projects. The Manual lists specific duties which are either related to the internal delegation of duties within the SCS or concerned with inspecting the project or advising the local authority to ensure compliance with the project specification and government regulations. The SCS also put forth an affidavit by Jerome N. Daugherty, a supervisory contract specialist for the SCS (Exhibit C attached to Government's Reply to Casey Corporation's Brief in Opposition to the Motion for Judgment on the Pleadings, filed October 22, 1982). In his affidavit, Daugherty says of the SCS's representative's job, "It was the job of such representative to see that the contracted work

as a possible third-party beneficiary and Casey's attorneys briefly mentioned this theory at oral argument, neither party has seen fit to brief the issue for the Court. This Court assumes that Casey is not relying on this theory since Casey did not assert it in its brief as a defense to the SCS's motion for summary judgment. Further

the Court sees no merit in the theory. Casey has produced no evidence that the SCS and Big Blue intended to benefit Casey or any other contractor when the two parties signed the contract between them. Such intent is a necessary element of a third-party beneficiary claim. 17 Am.Jur.2d *Contracts* § 304.

was performed correctly so as to protect and maintain the integrity of the government's investment. Such representative did not have the authority to run the entire project." Daugherty's Affidavit, ¶ 6.

The SCS, the party moving for summary judgment, has the burden of establishing the lack of a genuine issue of material fact. *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984). However, Rule 56(e) specifically provides that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

Also, the facts in dispute must be material, that is, they must be outcome-determinative under the applicable law. *Egger v. Phillips*, 710 F.2d 292 (7th Cir.1983).

The extent of Dynes' supervision is in dispute, but

> [i]t is plaintiff's responsibility to make such a showing [that Dynes acted within his authority] and plaintiff is deemed to have notice of [his] limited authority. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1[3], 92 L.Ed. 10 (1947); *National Bank of N. America v. United States*, 456 F.2d 754, 197 Ct.Cl. 948 (1972); *California-Pac. Util Co. v. United States*, 194 Ct.Cl. 703 (1971); *Fountain v. United States*, 427 F.2d 759, 192 Ct.Cl. 495 (1970), *cert. denied*, 404 U.S. 839, 92 S.Ct. 131, 30 L.Ed.2d 73 (1971); *Miami Metropolitan Bldg. Corp. v. United States*, 180 Ct.Cl. 503 (1967).

468 F.2d at 925. Since Casey has failed to make the required showing that Dynes was acting within his authority, summary judgment in favor of the SCS is proper on Casey's implied contract theory of relief.

**B.**

■ Casey's second contractual theory is that the SCS and Big Blue were involved in a joint venture. Casey primarily relies on *Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980), which says

> [g]rants of federal funds generally do not create a partnership or joint venture with the recipient, nor do they serve to convert the acts of the recipient from private acts to governmental acts absent extensive, detailed, and virtually day-to-day supervision. *U.S. v. Orleans*, 425 U.S. 807, 818, 96 S.Ct. 1971, 1977 [48 L.Ed.2d 390] ... (1976).

445 U.S. at 180, 100 S.Ct. at 984 (emphasis added). Casey argues that Dynes exercised "extensive, detailed and virtually day-to-day supervision" over the Big Blue construction project. Casey's allegations of extensive supervision are supported by the affidavit of Roger B. Casey and must be taken as true for purposes of this summary judgment motion. Nevertheless, Casey's claim based on a joint venture fails because Casey has neither alleged nor proved that Dynes' actions were authorized.

Casey has not cited, and this Court has not found, any cases where the United States has been held liable to a contractor based on a joint venture established by the U.S. exerting such day-to-day supervision. *Forsham* is the only case cited by the plaintiff in support of its proposition. Even in *Forsham*, the Supreme Court held that raw data developed by a private group of physicians and scientists conducting studies of diabetes treatment were not "agency records" subject to disclosure under the Freedom of Information Act, even though the group had received study grants from the Department of Health, Education, and Welfare. The case law does not define "extensive, detailed, and virtually day-to-day supervision," so the Court must look to general principles for guidance.

First, the unauthorized acts of government employees are not binding upon the government. *Housing Corp.*, 468 F.2d at 925. This prevents an unauthorized employee from making the U.S. a party to a joint venture. One of the requirements of

a joint venture is either an express or implied contract giving the U.S. and the local authority the right to direct and govern the conduct of the other. In this case, there is no express contract. (The grant of federal funds, combined with the requirement that certain standards be met, does not establish a joint venture. *D.R. Smalley*, 372 F.2d 505.) As discussed earlier, an unauthorized employee cannot make the U.S. a party to an implied contract. It follows that an employee must be authorized to exert "extensive, detailed, and virtually day-to-day supervision" for said supervision to create a joint venture between the U.S. and a local authority.

This rule is further supported by the strong policy against finding the U.S. liable to a contractor where the U.S. is providing funds pursuant to a contract with a local authority. "Federal funding reaches myriad areas of activity of local and state governments and activities in the private sector.... It is inconceivable that Congress intended to have waiver of sovereign immunity follow congressional largesse and cover countless unidentifiable classes of 'beneficiaries.'" *U.S. v. Orleans*, 425 U.S. 807, 816, 96 S.Ct. 1971, 1977, 48 L.Ed.2d 390 (1976). Thus the court must be careful so as not to use one line from *Forsham* as a key to open the government coffers.

Casey has neither alleged nor attempted to prove that Dynes was acting within his authority when he was exerting what Casey characterizes as "extensive, detailed, and virtually day-to-day supervision." Such authority is a necessary element of Casey's claim of a joint venture about which Casey has failed to raise a genuine issue of material fact. Thus Casey has not made a showing of joint venture sufficient to defeat the SCS's motion for summary judgment.

### IV.

This Court holds that it has jurisdiction over Casey's suit against the SCS and sees no reason to transfer the case to the Claims Court, particularly in light of its other rulings as set forth in this entry.

Further, the Court holds that the SCS has met its burden of proving that there are no genuine issues of material fact relating to the claims by Casey against the SCS and that the SCS is entitled to judgment as a matter of law. Casey does not have a viable claim against the SCS based on either an implied contract or joint venture theory. Therefore the Court finds that the SCS's motion for summary judgment should be GRANTED and that judgment shall be entered in favor of the SCS and against Casey.