**H.H.O., INC.**

v.

**The UNITED STATES.**

No. 113–83C.

United States Claims Court.

April 8, 1985.

Charles C. Flower, Yakima, Wash., for plaintiff.

Stephen J. McHale, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

YOCK, Judge.

This contract case is before the Court on the defendant's motion for partial summary judgment to dismiss a portion of the plaintiff's claim for lack of subject matter jurisdiction in accordance with RUSCC 12(b). In particular, the defendant asserts that the plaintiff, H.H.O., Inc., has brought a suit which partially lies in tort, rather than in contract, and thus such portion is not within the jurisdiction of this Court pursuant to the restrictions of the Tucker Act, 28 U.S.C. § 1491(a)(1).

As discussed below, this Court has determined that there are certain material facts in issue which indicate that the plaintiff may have a valid contract claim. However, the plaintiff's Claim No. 1 alleges, in part, consequential damages which are not recoverable as a matter of law in this action. The plaintiff also alleges, in Claim No. 1, matters that are tortious in nature and thus beyond this Court's jurisdiction. Therefore, the defendant's motion for partial summary judgment is granted in part and denied in part. Jurisdiction will lie to hear the plaintiff's contract claim, but the portion of the plaintiff's Claim No. 1 which seeks consequential damages or is otherwise tortious in nature will be dismissed.

### Facts

The plaintiff is a Washington state corporation engaged in the construction business, with its principal office in Kennewick, Washington. In 1980, the U.S. Forest Service awarded a road construction contract to the plaintiff, known as "Fishloop Opted Timber Sale Roads" ("Fishloop"). The contract called for road construction in the Wenatchee National Forest, Washington, including clearing, grubbing, excavation, embankment, developing a water supply, watering, development of a pit or quarry, application of a rock aggregate base to the road surface, and seeding and mulching. On July 4, 1980, the defendant's contracting officer, Mr. William Voss, issued a Notice to Proceed with work under the contract. He also appointed Mr. Peter Weber, a Forest Service employee, as the contracting officer's representative at the work site.

Thereafter, until November 1980, the project was supervised and performed for the plaintiff by Mr. Alva D. Nevills of Nevills Excavation. During such period, Mr. Nevills and his crew were primarily engaged in clearing trees, brush and slash from the project site. Mr. Weber, how-

ever, became dissatisfied with certain aspects of the work undertaken by Mr. Nevills during the period August 28, 1980, to October 17, 1980, and ordered certain corrective work accomplished. During this period, Mr. Weber kept Mr. Voss advised of his actions. Finally, on October 17, 1980, Mr. Voss wrote a letter to the plaintiff which "criticized" the plaintiff's work thus far on the project and forwarded a copy of the letter to the plaintiff's bonding company, Balboa Insurance Co. ("Balboa").

Although the plaintiff's complaint did not identify the specific claims comprising his single count complaint against the Government, the plaintiff's Pretrial Submission (as amended) was more specific and listed four separate claims, which were in turn broken down into several subparts. Claim No. 1 was entitled "Contracting Officer Voss's Letter to Bonding Company." Claim No. 2 was entitled "Construction Delay." Claim No. 3 was entitled "Improper Deduction from Final Contract Price." Claim No. 4 was entitled "Improper Withhold and Deduction of Nevills' Claim." The defendant's instant motion for partial summary judgment relates only to Claim No. 1. In this regard, the plaintiff's Pretrial Submission (as amended) lists the following elements of Claim No. 1:

| | | |
|---|---|---|
| 1. | Letter of credit expense | $ 900.00 |
| 2. | Loss of equipment rental | 80,000.00 |
| 3. | Lost wages—4 full-time employees | 40,000.00 |
| 4. | Lost profit (this job) | 25,000.00 |
| 5. | Lost profit (other jobs) | 50,000.00 |
| 6. | Expenses, time loss attempting to reinstate bond; | 5,500.00 |
| 7. | Breach of contract conditions to properly inspect job and administer contract in good faith, to cooperate and to not interfere with Plaintiff's performance by creating problems with Plaintiff's bonding company; | 100,000.00 |
| | TOTAL | $301,400.00 |

On December 16, 1983, the plaintiff submitted the above amended language in an "Amendment to Pre-trial Submission." Prior to such amendment, the plaintiff's initial Pretrial Submission identified item 7

of Claim No. 1 as "Defamation of reputation."

In its Claim No. 1, H.H.O. alleges that Mr. Voss's forwarding of a copy of his October 17, 1980, letter to Balboa was unjustified, especially since it contained faulty information and caused Balboa to require the plaintiff to provide an additional $45,000 irrevocable letter of credit in order for Balboa to continue its bonding of the plaintiff on the Fishloop contract. In addition, the plaintiff alleges that, as a result of such letter, Balboa refused to bond the plaintiff on other construction jobs unrelated to this contract, which the plaintiff had contemplated undertaking.

Thus, the plaintiff claims that Balboa's demand for the additional letter of credit impeded its performance on the Fishloop contract and caused it to incur $151,400 in damages, including expenses in obtaining the letter of credit, loss of equipment rental, lost wages, and lost profit on the Fishloop contract during the consequent delay. Moreover, the plaintiff seeks $100,000 in additional damages on the grounds that the inaccurate criticism contained in Mr. Voss's letter harmed its on-going business relationship with Balboa and damaged its overall business reputation, causing Balboa to refuse to bond the plaintiff on other future jobs and leading to H.H.O.'s consequent inability to obtain bonding from other sources. Finally, the plaintiff alleges that the Government's forwarding of the letter to Balboa caused it to lose an additional $50,000 in anticipated profits from other construction jobs, which the plaintiff had contemplated undertaking. Thus, the plaintiff seeks $301,400, plus interest, in money damages under its Claim No. 1.

### Discussion

The Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), expressly excludes the consideration of tort claims against the Government from the jurisdiction of this Court:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or

any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages *in cases not sounding in tort.* [Emphasis supplied.]

After noting that the plaintiff bases its Claim No. 1 on the Government's supplying Balboa with erroneous information regarding H.H.O.'s performance on the Fishloop contract, the Government argues that Claim No. 1 is merely one for tortious misrepresentation, rather than for breach of contract. Particularly, the Government emphasizes that the plaintiff, in its presentation of the claim to the contracting officer and in its original pretrial submission to this Court, identified item 7 of its Claim No. 1 as the result of "[d]efamation of reputation."

In the alternative, the defendant asks this Court to dismiss that portion of the plaintiff's Claim No. 1 which seeks consequential damages for injury to the plaintiff's business reputation (item 7 of Claim No. 1 for $100,000) and for lost profit on other jobs unrelated to the Fishloop contract (item 5 of Claim No. 2 for $50,000). In support of such request, the Government argues that, even if Claim No. 1 constitutes a contract claim, such damages are consequential in nature and thus, as a matter of law, are not recoverable in this action.

The plaintiff has responded that its Claim No. 1 is essentially based on a tortious breach of contractual duties, rather than purely in tort. On this basis, the plaintiff distinguishes its Claim No. 1 from a simple tort action by arguing that the test of this Court's jurisdiction is whether there has been a "tortious" breach of contract, rather than a tort independent of the contract. So long as there is some connection between the tortious conduct and the contractual obligations owed by the Government to the plaintiff, the plaintiff stresses that jurisdiction in this Court is not prohibited by the Tucker Act.

It is the plaintiff's contention that the Government has tortiously breached its im-plied contractual promises not to hinder or delay the plaintiff's performance nor to increase his costs. *See Lewis-Nicholson, Inc. v. United States,* 213 Ct.Cl. 192, 550 F.2d 26 (1977). Moreover, the plaintiff alleges a breach of the Government's duty to inspect properly the plaintiff's work performance and argues that such failure is the basis of the Government's communication of misinformation to Balboa, which gives rise to all of the damages comprising the plaintiff's Claim No. 1.

■ It is undisputed that this Court has a limited statutory jurisdiction which does not extend to tort claims. *Transcountry Packing Co. v. United States,* 215 Ct.Cl. 390, 568 F.2d 1333 (1978). Nevertheless, the Tucker Act consistently has been interpreted to allow jurisdiction over claims which, although perhaps somewhat "tortious" in nature, are essentially based upon the breach of a contractual obligation. *Chain Belt Co. v. United States,* 127 Ct.Cl. 38, 54, 115 F.Supp. 701, 711–12 (1953). Thus, an action may be maintained in this court which arises primarily from a contractual undertaking, regardless of the fact that the claim resulted from the defendant's negligent performance of the contract. *Bird & Sons, Inc. v. United States,* 190 Ct.Cl. 426, 431, 420 F.2d 1051, 1054 (1970). *See also Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 395, 59 S.Ct. 516, 521, 83 L.Ed. 784 (1939); *United States v. Huff,* 165 F.2d 720, 725 (5th Cir.1948).

■ The test for jurisdiction in this Court, under the Tucker Act, is whether there has been in effect a "tortious" breach of contract, rather than a tort independent of the contract. *L'Enfant Plaza Properties, Inc. v. United States,* 227 Ct.Cl. 1, 645 F.2d 886 (1981). In order for this Court to have jurisdiction over suits of this nature, there must be a direct connection between the Government's contractual obligations and the alleged tortious conduct. It is not jurisdictionally sufficient if the alleged tortious conduct is merely "related" in some general sense to the contractual relationship between the parties. *L'Enfant Plaza*

*Properties, Inc. v. United States, supra,* 227 Ct.Cl. at 11, 645 F.2d at 892; *Aleutco Corp. v. United States,* 244 F.2d 674, 678 (3d Cir.1957) (the mere fact that the claimant and the United States were in a contractual relationship does not convert an otherwise tortious claim into a contract claim).

In *Olin Jones Sand Co. v. United States,* 225 Ct.Cl. 741 (1980), the plaintiff sought damages for, in part, allegedly false statements made by representatives of the contracting officer to the plaintiff's bonding company regarding the plaintiff's performance. The plaintiff in that case, as here, charged that these misrepresentations led the bonding company to withdraw from further issuance of bonds to the plaintiff, rendering the plaintiff unable to secure other similar contract work. The Government moved to dismiss the plaintiff's claim on the ground that it sounds in tort, rather than in contract. In dealing with the Government's motion, the Court of Claims stated that:

> Where, as is the case here, a claim is based on breach of contract it is properly within the jurisdiction of this court even though it also alleges that defendant engaged in tortious conduct in breaching the contract. In *Fountain v. United States,* 192 Ct.Cl. 495, 427 F.2d 759 (1970), *cert. denied,* 404 U.S. 839 [92 S.Ct. 131, 30 L.Ed.2d 73] (1971), we specifically stated that "[i]f contractual relations exist, the fact that the alleged breach is also tortious does not foreclose Tucker Act jurisdiction." *Id.* at 498, 427 F.2d at 761. Insofar as plaintiff's references to defendant's alleged misrepresentations are merely another way of asserting that a breach of contract occurred, the sixth claim is not barred simply because it might also be stated as a tort. However, damages arising from defendant's alleged breach must still be limited to compensation for those injuries directly related to completion of the contract in question, as opposed to any remote or speculative effects the misrepresentations might have had on obtaining

bonding for other contracts. The damages must be proper contract damages. *Olin Jones Sand Co. v. United States, supra,* 225 Ct.Cl. at 745 (cases and footnote omitted).

■ Accordingly, under the above reasoning set out in *Olin Jones,* this Court believes that there exists a sufficient nexus between the Government's allegedly tortious conduct and the Government's alleged breach of its contractual obligations so as to allow this Court to exercise jurisdiction over items 1, 2, 3, 4, and 6 of the plaintiff's Claim No. 1. However, items 5 and 7 of the plaintiff's Claim No. 1 must be dismissed at this juncture, since they lack the required direct nexus in order for this Court to assume jurisdiction over them.

■ In direct response to the defendant's alternative argument that certain of the damages claimed are "consequential" in nature and thus not recoverable under a contract theory, this Court must determine whether the plaintiff's damages were the natural and probable consequences of the alleged breach. *See Gardner Displays Co. v. United States,* 171 Ct.Cl. 497, 504–05, 346 F.2d 585, 589 (1965); *Ramsey v. United States,* 121 Ct.Cl. 426, 433, 101 F.Supp. 353, 357 (1951), *cert. denied,* 343 U.S. 977, 72 S.Ct. 1072, 96 L.Ed. 1369 (1952). If so, then, assuming that the plaintiff can prove that the Government breached its contract, the plaintiff would properly be entitled to recover the damages sought. However, if such damages were only remotely or consequently caused by the alleged breach, then they cannot be recovered.

In this regard, the Court of Claims, in *Olin Jones Sand Co. v. United States, supra,* 225 Ct.Cl. at 743–44, discussed a very similar problem in the following manner:

> The damages claimed under Count VI can be roughly divided into two categories; those which relate to completion of this particular contract, and those which involve plaintiff's ability to obtain other contracts or work.
>
> With respect to the first category it is alleged that, because of the defendant's

delay in making these contract payments, plaintiff could not meet payments owed to its employees, subcontractors and suppliers, under the instant contract, and also because of payment delays lost standing in the business community which resulted in a direct impact on the performance of the present contract. It is impossible to say that this class of injuries cannot be shown at trial to have been a direct and foreseeable consequence of a delay in contract payments. Plaintiff may recover them if it can show that the Government's failure to make timely progress payments under the contract proximately resulted in damage of this direct type affecting this particular contract. On this aspect there can be no decision as a matter of law.

While plaintiff is thus not barred from recovering this kind of damages if it can prove them, it may not recover for damages coming within the second category described above, *i.e.,* those damages which allegedly resulted when, because of defendant's actions, the bonding company or others refused to issue bonds on behalf of plaintiff on other contracts or work, thus crippling the contractor's ability to obtain new contracts or new work. Even if proven, these damages would be too remote and speculative to be recoverable.

■■■ Here, the plaintiff seeks $100,000 in damages (item 7 of Claim No. 1) for what it characterizes as either "[d]efamation of reputation" or "[b]reach of contract conditions to properly inspect job and administer contract in good faith, to cooperate and to not interfere with Plaintiff's performance by creating problems with Plaintiff's bonding company." In either case, this Court lacks jurisdiction to award the plaintiff the relief which it seeks, since both characterizations are grounded in tort—defamation or tortious interference. Further, these damages must be considered to have been only remotely or consequentially caused by the Government's alleged breach of the plaintiff's contract, and thus cannot be recovered as a matter of law.

Likewise, losses on contracts other than the Fishloop contract are merely consequential (item 5 of Claim No. 1). There is no assurance that the plaintiff would have been awarded any contracts in question had bonding been available. "Receipt or non-receipt of future contracts is both speculative in nature and dependent on many factors not related to bonding." *Olin Jones Sand Co. v. United States, supra,* 225 Ct.Cl. at 744. Moreover, there is no suggestion that such losses possibly could have been contemplated by the parties at the time of their entering the instant contract. *See Kurz & Root Co. v. United States,* 227 Ct.Cl. 522, 531 (1981); *Northern Helex Co. v. United States,* 207 Ct.Cl. 862, 886–87, 524 F.2d 707, 720 (1975), *cert. denied,* 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976).

Accordingly, the plaintiff is neither entitled, as a matter of law, to recover damages for lost profits on contracts other than the Fishloop Project (item 5 of Claim No. 1) nor entitled to recover for damage to its business reputation (item 7 of Claim No. 1). Thus, these elements of the plaintiff's complaint will be dismissed.

## CONCLUSION

In view of the above discussion, the defendant's motion for partial summary judgment is denied as to items 1, 2, 3, 4, and 6 of the plaintiff's Claim No. 1. However, the defendant's motion is granted as to items 5 and 7 of the plaintiff's Claim No. 1, and these elements of the plaintiff's complaint will be dismissed.

The defendant is allowed until June 5, 1985, to respond to the plaintiff's pretrial submissions.