**DAKOTA TRIBAL INDUSTRIES,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–235 C.**

United States Court of Federal Claims.

Nov. 3, 1995.

Lyle Moe, Grand Forks, ND, for plaintiff.

Arnold M. Auerhan, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

### ORDER

MILLER, Judge.

This case is before the court on defendant's motion to dismiss claims of misrepresentation from a complaint[1] for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) because they fail to allege a sufficient connection with specific contract obligations. Argument is deemed unnecessary.

### FACTS

The following facts came from plaintiff's complaint. Dakota Tribal Industries ("plaintiff") undertook to respond to a bid solicita-

---

1. Although plaintiff styled its statement of its cause of action as a "Petition," the court treats it as a complaint.

tion by the Defense Personnel Support Center (the "Support Center"), an agency of the Defense Logistics Agency, for GP Medium Tents needed during the Persian Gulf conflict. Plaintiff had no prior experience in the procurement and production of tents of this type and was unaware that the Support Center's agent was likewise inexperienced. During the negotiation process, the Support Center's agent continually pressed plaintiff to lower its bid prices in order to obtain the award, specifically demanding lower labor hours per unit. The agent led plaintiff to believe that it would not be considered for the contract if it did not lower its proposed price.

In formulating its proposal, plaintiff relied on the information provided by the Support Center's agent. Plaintiff was awarded and has performed under the contract. However, due to numerous defects in the technical package that the Support Center provided, plaintiff incurred substantial unforeseen costs ·in reengineering specifications and modifying the tents during production. These costs form the basis of plaintiff's suit for breach of contract.

## DISCUSSION

### 1. *Motion to dismiss*

 In ruling on defendant's motion to partially dismiss plaintiff's complaint, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974)); *Catawba Indian Tribe v. United States,* 982 F.2d 1564, 1568–69 (Fed.Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993). The non-moving party bears the burden of establishing jurisdiction. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988).

### 2. *Jurisdiction over tortious claims as compared to those "sounding in tort"*

 The Court of Federal Claims' jurisdictional statute, the Tucker Act, confers power to adjudicate "any claim against the United States founded [upon] ... any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1988 & Supp. V 1993). The Court of Claims, relying on the Supreme Court's decision in *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), determined that claims "sounding in tort" include those " 'based on negligent misrepresentation, wrongful inducement, or the careless performance of a duty allegedly owed.' " *Aetna Casualty & Surety Co. v. United States,* 228 Ct.Cl. 146, 164, 655 F.2d 1047, 1059 (1981) (quoting *Somali Dev. Bank v. United States,* 205 Ct.Cl. 741, 749, 508 F.2d 817, 821 (1974)). While cases based on such claims should ordinarily be dismissed for lack of jurisdiction, *see Aetna,* 228 Ct.Cl. at 164, 655 F.2d at 1059; *see also Jackson v. United States,* 216 Ct.Cl. 25, 45, 573 F.2d 1189, 1199 (1978), exceptions to the rule have been identified. *See, e.g., Summit Timber Co. v. United States,* 230 Ct.Cl. 434, 440–41, 677 F.2d 852, 856 (1982) (allowing action where contract documents contained "erroneous factual representations"); *Bird & Sons, Inc. v. United States,* 190 Ct.Cl. 426, 431, 420 F.2d 1051, 1054 (1970) (recognizing jurisdiction where " 'loss resulted from the negligent manner in which defendant performed its contract' ") (quoting *Chain Belt Co. v. United States,* 127 Ct.Cl. 38, 54, 115 F.Supp. 701, 711–12 (1953)).

 On the other hand, "a tortious breach of contract is not a tort independent of the contract so as to preclude an action under the Tucker Act." *Burtt v. United States,* 176 Ct.Cl. 310, 314, 1966 WL 8878 (1966) (citation omitted). In order for the court to have jurisdiction over this category of claims, the court looks to the substance of the claim. To foreclose consideration of such a claim merely because defendant characterizes the claim as a tort would elevate form over substance. Plaintiff's claim is not barred simply because it can be stated as a tort. *Olin Jones Sand Co. v. United States,* 225 Ct.Cl. 741, 745, 1980 WL 13211 (1980); *see also Beauchamp v. United States,* 6 Cl. Ct. 400, 403 (1984).

■ Plaintiff's claims based on misrepresentation are incontrovertibly tortious in nature. Plaintiff concedes as much. *See* Plf's Br. filed Sept. 1, 1995, at 4. However, if the alleged misrepresentations are "so closely bound up" with the contractual relationship between the two parties, plaintiff's action properly lies in contract rather than tort. *L'Enfant Plaza Properties, Inc. v. United States*, 227 Ct.Cl. 1, 11, 645 F.2d 886, 892 (1981). This principle holds so long as plaintiff is able to show a connection between the alleged wrongful misrepresentations and any contractual obligations owed to it by the Support Center. *Id.; see also Beauchamp*, 6 Cl.Ct. at 403 (requiring a "definite connection between the alleged tortious conduct and a contractual obligation").

■ Plaintiff contends that the conduct of which it complains "stems directly from the contractual relationship itself." Plf's Br. filed Sept. 1, 1995, at 6. Plaintiff relies on the dicta in *Fountain v. United States*, 192 Ct.Cl. 495, 497, 427 F.2d 759, 761 (1970) (per curiam), *cert. denied*, 404 U.S. 839, 92 S.Ct. 131, 30 L.Ed.2d 73 (1971), to the effect that so long as "contractual relations" exist, the tortious nature of a breach does not foreclose Tucker Act jurisdiction. Unfortunately, plaintiff misconstrues the relationship described by the *Fountain* court. The "contractual relations" described by the court had at their root the Government's alleged promise to pay for the plaintiff business owner's relocation, which gave rise to the promisor/promisee relationship. 192 Ct.Cl. at 497–98, 427 F.2d at 760–61.

Reliance on the "contractual relationship" referred to in *L'Enfant Plaza*, 227 Ct.Cl. at 11, 645 F.2d at 892, is equally unavailing. Plaintiff has attempted to ascribe the contractual relationship to the period of negotiations prior to contracting. The parties in *L'Enfant Plaza* had entered into a lease contract giving rise to a lessor/lessee relationship many years before the dispute that was brought to court. Plaintiff has alleged no comparable pre-existing relationship with the Support Center.

■ Plaintiff also fails to show a connection between the alleged wrongful misrepresentations and any contractual obligations owed to it by the Support Center. Plaintiff alleges that the Support Center breached its contractual obligation to negotiate in good faith, but has cited no controlling precedent to support the contention that such an obligation existed prior to the parties having reached any agreement.[2] The Restatement of the Law relied on by plaintiff states: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Restatement (Second) of Contracts* § 205 (1981). Plaintiff fails to note, however, the language in the comment following this section, entitled "Good faith in negotiation," which expressly disclaims this section's applicability to situations like the one at issue.[3]

In *Summit Timber* the court considered a contract containing "positive, but erroneous," representations upon which the plaintiff lumber company had "in fact relied in bidding on, entering into and performing the said contract." 230 Ct.Cl. at 440, 677 F.2d at 856–57. Defendant claimed that factual misstatements that the Government made before the contract was signed could not provide grounds to constitute a breach of the contract into which it subsequently entered with plaintiff. While the court rejected this argument as "sheer sophistry," and ruled that the Government could be held liable for damages attributable to such misstatements, it did so

---

2. Plaintiff has cited an alternative theory upon which liability might be grounded. In its latest brief, plaintiff suggests the Support Center violated Federal Acquisition Regulation ("FAR") provisions prohibiting "auction techniques" and "technical leveling." *See* 48 C.F.R. §§ 15.610(d), (e)(2)(ii) (1994). While defendant's pre-award conduct of which plaintiff complains may have violated these FAR provisions, the complaint fails to ground plaintiff's claims on this basis. Unless and until plaintiff has made a proper request to amend the complaint pursuant to RCFC 15(a), the court cannot consider the merits of such a theory.

3. Comment c of the Restatement reads: "This Section, like Uniform Commercial Code § 1–203, does not deal with good faith in the formation of a contract.... Moreover, remedies for bad faith in the absence of agreement are found in the law of torts or restitution." *Restatement (Second) of Contracts* § 205 cmt. c (1981).

only after acknowledging the express incorporation into the contract of the Government's "erroneous factual representations." *Id.* at 440–41, 677 F.2d at 856–57. The contract in this case does not incorporate any specific provisions which defendant might be said to have breached.[4]

In *Gregory Lumber Co. v. United States,* 9 Cl.Ct. 503, 526 (1986), the court considered similar claims of bad faith and misrepresentation stemming from the "pre-contract, pre-award stage." Relying on the "acknowledged privity of contract" upon which plaintiff's claims were clearly grounded, *id.* at 525, 527, Judge Gibson concluded that an action for breach of contract would lie. Two of the cases cited, *Summit Timber* and *Chris Berg, Inc. v. United States,* 186 Ct.Cl. 389, 404 F.2d 364 (1968) (per curiam), involved misrepresentations expressly incorporated into the contract. *Florida Keys Aqueduct Auth. v. United States,* 231 Ct.Cl. 911, 912, 1982 WL 25805 (1982), supports the approach of *Gregory Lumber,* but relies on *Chris Berg,* which is distinguishable. *Morris v. United States,* 33 Fed.Cl. 733 (1995), also decided by Judge Gibson, is more on point, in that the contract contained the same caveats, such as breach of duty to disclose superior knowledge—that are within the court's jurisdiction—along with several alleged pre-contract misrepresentations amounting to inducement that were not connected with specific contractual obligations. Essentially what remains of plaintiff's complaint in the case at bar, after excision of claims for misrepresentation, is a superior knowledge claim. Adjudication of that claim likely will involve the same evidence as plaintiff would rely on to prove the dismissed claims. Technically, however, defendant is entitled to its ruling. Because plaintiff has not shown any provision incorporating any misrepresentations made by the Support Center, plaintiff's claims of misrepresentation sound in tort, and the court thus lacks jurisdiction over them, since they do not qualify as claims for tortious breach of contract over which jurisdiction can be exercised.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss in part for lack of subject matter jurisdiction is granted. Paragraph 20 of the complaint insofar as it refers to tortious interference with the contract based on pre-award misrepresentations is dismissed. The parties shall file their Joint Preliminary Status Report by November 17, 1995.

**IT IS SO ORDERED.**

---

4. Plaintiff's opposing brief failed to direct the court to any specific provisions in the contract. In an order entered on September 22, 1995, the court directed plaintiff to identify all contractual provisions that the Support Center allegedly breached. Plaintiff pointed to the pricing provisions that it submitted, implicitly reflecting the per-unit cost incorporated into the contract. This is not a contract provision that the Support Center could breach, absent a failure to pay the stated amount. Plaintiff also submitted a later bid proposal incorporated into the contract reflecting explicitly the estimated hours of labor per unit. Plaintiff noted that, after its experience with the instant contract, this information was prudentially included. This subsequent contract does not illuminate the terms of the contract at issue.