D.V. GONZALEZ ELECTRIC &
GENERAL CONTRACTORS,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–993C.

United States Court of Federal Claims.

March 3, 2003.

David M.F. Lambert, Washington, D.C., for plaintiff.

Jeffrey A. Belkin, with whom were on the briefs David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and Donald E. Kinner, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

## *OPINION*

SMITH, Senior Judge.

This government contract case is before the Court on defendant's Motion to Dismiss. Plaintiff, D.V. Gonzalez Electric & General Contractors, Inc. ("GEGC") seeks compensation for expenses arising from the breach of alleged express, implied-in-fact, and implied-in-law contracts with the U.S. Department of Veterans Affairs ("VA") to replace the fire alarm system at the VA Medical Campus ("VAMC") facility in Canandaigua, New York. Defendant moved to dismiss the Complaint alleging lack of jurisdiction and failure to state a claim under Rules of the Court of Federal Claims ("RCFC") 12(b)(1) and 12(b)(6), respectively. Based on the briefs filed and oral argument held in this case, the Court finds that jurisdiction is lacking with

regard to the plaintiff's negligent misrepresentation and implied-in-law contract claims, and that GEGC's remaining counts fail to state a claim upon which relief may be granted. Accordingly, the Court GRANTS the defendant's Motion to Dismiss.

## FACTS

This dispute arises from plaintiff's contract with the VA to replace the fire alarm system in nineteen (19) buildings at the VAMC facility in Canandaigua, New York ("VAMC project"). In preparation for the solicitation of the VAMC project, the VA awarded an Architectural & Engineering ("A & E") design and technical services contract to Robson & Woese, Inc. ("Robson") on January 24, 1994. The scope and price of the A & E contract was scaled back several times to conform to the VA's allotted funds. The A & E contract stipulated that the VA would provide Robson with on-site survey information and drawings suitable for the VAMC project design. The contract also included a "Design Within Funding Limitations" clause, and an estimated construction contract price of $605,000.

In November of 1994, the VA notified the Small Business Administration ("SBA") that the contract at issue was eligible for a set-aside under the SBA's Section 8(a) program with an estimated cost between $500,000 and $1,000,000. The A & E contract was completed in early June of 1995, and estimated the cost of the VAMC project to be $771,690. The VA adopted the A & E estimate as its project cost estimate and established a fair market price of $900,000 for the fire alarm system project. On June 30, 1995, final solicitation specifications and drawings were forwarded to GEGC and the SBA. On July 25, 1995, GEGC submitted its first detailed cost proposal to the VA in an amount totaling $1,369,418. Over the next several days, GEGC and the VA discussed variances between the estimates and negotiated reductions in the scale and scope of the project. On August 1, 1995, GEGC submitted its best and final offer in the amount of $900,000.

Also on August 1, 1995, the VA requested the Defense Contract Audit Agency to perform an audit of GEGC's proposal. The VA awarded the contract to plaintiff on August

23, 1995, subject to a possible price adjustment based on the audit. On September 27, 1995, the contract was modified via a supplemental agreement to $859,086 resulting from the audit. The final contract required GEGC to "[p]rovide all labor, material and equipment, and perform all work to replace fire alarm systems at the VA Medical Center, Canandaigua, New York, in accordance with VA Drawings and Specifications." The contract initially called for completion within 700 days from the government's Notice to Proceed on October 11, 1995. GEGC began work at the VAMC facility in January of 1996. Due to unexpected delays, GEGC requested and received several time extensions, and the project was completed in 901 days, on April 15, 1998.

On March 20, 1997, GEGC submitted a formal request for an equitable adjustment ("REA"), alleging a differing site condition, mutual mistake, and superior knowledge claims. The REA was based upon site congestion encountered by GEGC in various forms which plaintiff claims caused substantial delays and increased its cost of performance. On May 5, 1997, the Contracting Officer informed GEGC that the REA lacked sufficient justification. Over nine months later, on February 18, 1999, GEGC converted its REA to a certified claim of $390,412 pursuant to the Contract Disputes Act of 1978. The Contracting Officer issued his final decision denying plaintiff's claim on March 16, 1999. The Veterans Administration Board of Contract Appeals ("VABCA") dismissed this matter on July 14, 1999, for lack of jurisdiction. Plaintiff filed the instant case with this Court on December 13, 1999.

Plaintiff's Complaint sets forth eight counts, which can be categorized into three primary groups: Counts I–V (Breach of Implied Contract, Superior Knowledge, Negligent Misrepresentation, and Breach of Covenant of Good Faith and Fair Dealing), Counts VI & VII (Invalidation of the Express Contract), and Count VIII (Mutual Mistake). The allegation tying all of these counts together is GEGC's claim that the

government's contract estimate was procured illegally and was inaccurate with respect to the impact of site congestion. GEGC claims that as a result of the government's unlawful conduct it suffered $478,677 [1] in cost overruns.

## DISCUSSION

### I. JURISDICTION

The Tucker Act provides the Court with jurisdiction over claims against the United States founded either upon the Constitution, an Act of Congress, a regulation of an executive department, or upon an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2002); *Gould v. United States*, 67 F.3d 925, 928 (Fed.Cir.1995). "The party invoking jurisdiction has the burden to show compliance with the Tucker Act." *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1324 (Fed.Cir.1997).

■ In the instant case, plaintiff bases its jurisdictional claim on the Contract Disputes Act of 1978, as amended, 41 U.S.C. §§ 601–613 (2002); and 28 U.S.C. §§ 1491(a) & (b)(2) (2002), as amended. Under the Tucker Act this Court's contract-based jurisdiction "extends only to contracts either express or implied in fact, and not to claims implied in law." *Trauma Serv.*, 104 F.3d at 1324. As a result of the dismissal of plaintiff's appeal by the VABCA, this Court has jurisdiction to hear the express and implied-in-fact contract claims. 41 U.S.C. § 609(a)(1) (2002). Plaintiff has also indirectly alleged that the government breached an implied-in-law contract. It is well established, however, that this Court does not have jurisdiction over implied-in-law contracts. *Hercules Inc. v. United States*, 516 U.S. 417, 423–24, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996).

### II. STANDARD OF REVIEW

The government has moved to dismiss this matter for either lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), or for failure to state a claim upon which relief may be granted pursuant to RCFC 12(b)(4).[2]

---

1. Damages represent $390,412 plus interest.

2. RCFC 12(b)(4) was redesignated RCFC 12(b)(6) under the revised rules of the U.S. Court of Federal Claims, effective May 1, 2002.

RCFC 12(b)(1) provides for dismissal of a claim based on a "lack of jurisdiction over the subject matter." Whether a court possesses subject matter jurisdiction depends upon the "court's general power to adjudicate in specific areas of substantive law." *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir. 1999). The burden of establishing jurisdiction is on the plaintiff. *Buesing v. United States,* 42 Fed.Cl. 679, 685 (1999). Alternatively, RCFC 12(b)(6) provides for dismissal based on the "failure to state a claim upon which relief can be granted." In ruling upon a motion to dismiss, a court must grant the motion "when the facts asserted by the plaintiff do not under the law entitle him to a remedy." *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir.2000). In ruling on both types of motions, the court must accept all well pled factual allegations as true and draw all reasonable inferences in favor of the non-movant. *Id.* at 684.

## III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

This conflict centers around GEGC's allegations that the express contract is invalid because the agreed upon contract price was influenced by unlawful government acts. Specifically, GEGC contends that the contracting officer illegally procured the A & E estimate and then failed to follow applicable regulations when negotiating the contract price for the VAMC project. The defendant, however, contends that GEGC has no legal right to rely upon an estimate, whether negligent or illegal, that is not incorporated explicitly into either the solicitation or the contract. Furthermore, the government argues that the regulations relied on by GEGC exist primarily for the benefit of the government, and therefore do not create an independent right of action for the plaintiff.

There is no dispute that GEGC freely and voluntarily entered the contract, nor any allegation that the defendant breached the contract during the contract term. To the contrary, the record reveals that the government accommodated GEGC's needs during performance by granting time extensions and approving small obligation increases. In addition, GEGC previously completed thirty-one (31) smaller contracts for the VA, and therefore was familiar with site congestion and workplace conditions. The Complaint sets forth a number of allegations which the Court believes will resolve themselves more clearly upon initially addressing plaintiff's claim that the express contract is either void or voidable. Therefore, we begin by analyzing the validity of the express contract to determine if it supercedes GEGC's implied-in-fact contract claims.

### A. Invalidation of the Express Contract

In Counts VI and VII, GEGC alleges that the express contract is either void or voidable for three possible reasons: (1) the government relied upon an illegal price estimate and failed to follow applicable procurement regulations in negotiating reductions in the contract price; (2) the law required the contract to be priced based upon GEGC's costs plus a fee rather than a fixed price; or (3) the Anti–Deficiency Act, 31 U.S.C. § 1341 (2002), compelled the government to force GEGC to reduce its contract price to stay within the appropriated funds. Taken together, these three grounds amount to the allegation that the agreed upon contract price was diminished by several unlawful government acts. Under such circumstances, a contractor may seek reformation of its price term, even after performance is completed. *LaBarge Prods. v. West,* 46 F.3d 1547, 1552–53 (Fed.Cir.1995). Specifically, "if government officials make a contract they are not authorized to make, in violation of a law enacted for the contractor's protection, the contractor is not bound by estoppel, acquiescence or failure to protest." *Id.* at 1552. The Court will address each claim separately.

#### 1. Statutory and Regulatory Violations by Contracting Officer

GEGC's primary argument is that the government engaged in misrepresentations and violations of procurement law that unlawfully decreased GEGC's initial offer to fall within an illegal estimate that the government believed to be the appropriate price for the VAMC project. First, plaintiff alleges that the A & E contract, from which the government estimated the fair market price for the

project, was procured in violation of the law. GEGC claims that the use of the A & E estimate to derive the government's fair market price adversely influenced the contract negotiations and produced a defective contract price term. Second, plaintiff alleges that the contracting officer's failure to comply with several Section 8(a) procurement requirements during the contract negotiations resulted in a flawed price term for the contract. Specifically, plaintiff claims Federal Acquisition Regulation ("FAR") § 19.806 and Veterans Administration Acquisition Regulation ("VAAR") § 819.806 required the VA and the SBA to investigate and resolve any disparities between GEGC's offered price, the government's estimated fair market price, and the A & E estimate. Plaintiff asserts that any discrepancy between GEGC's initial offer and the government's estimated fair market price required a pre-award audit under FAR § 15.805-5. The failure to conduct this audit, coupled with the government's repeated references to the allegedly illegal estimate, compelled GEGC to reduce its offer to meet the government's estimated fair market price. In addition, plaintiff claims that the government's failure to collaborate with the SBA in the event of disparities between the offered price and the fair market price, forfeited the SBA's option of funding the difference and negatively influenced GEGC's decision to accept the contract.

■ In order for GEGC to maintain a suit against the government for violation of a regulation, that regulation must exist for the benefit of the private contractor. *Freightliner Corp. v. Caldera,* 225 F.3d 1361, 1365 (Fed.Cir.2000) (citing *Cessna Aircraft v. Dalton,* 126 F.3d 1442, 1451 (Fed.Cir.1997); *Rough Diamond v. United States,* 351 F.2d 636, 640–42, 173 Ct.Cl. 15 (1965)). Furthermore, "if the primary intended beneficiary of a statute or regulation is the government, then a private party cannot complain about the government's failure to comply with that statute or regulation, even if that party derives some incidental benefit from compliance with it." *Cessna Aircraft,* 126 F.3d at 1451–52. In assessing whether a regulation confers a cause of action upon the private contractor, the Court must examine each regula-

tion independently. *Freightliner,* 225 F.3d at 1365. In *Freightliner,* the Federal Circuit analyzed two regulations, FAR § 17.207 and Defense Acquisition Regulation § 1–1502(e), and determined that they operated as internal operating and accounting procedures that existed primarily for the benefit of the government, not the private contractor. *Id.* at 1365–66. In short, the regulations existed "... to ensure that the [contracting officer] acts in the best interest of the government;" and were "... designed to prevent the Government from overspending ...." *Id.* at 1366. Thus, the Court will examine each alleged statutory or regulatory violation to determine if they were for the benefit of the government or the plaintiff.

■ GEGC's first argument for invalidation of the express contract is that the A & E estimate was procured in violation of procurement regulations. Specifically, plaintiff argues that after awarding the A & E contract, the government reduced the scope of work under the A & E contract by eliminating requirements to verify site conditions and to develop specific site conditions data. Plaintiff contends that these contract reductions adversely affected the A & E estimate, which in turn, underestimated the government's fair market price. *See* 15 U.S.C. § 637(a)(3)(B)(ii) (2002) (stating an "estimate of a current fair market price ... shall be derived from a price or cost analysis."). The government initially responds that even if the A & E contract were procured illegally, GEGC lacks the standing to challenge the "price or cost analysis", i.e., the A & E contract. *See* 31 U.S.C. § 3551(2) (2002) (defining "interested party" as an "... actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or the failure to award the contract."). Furthermore, the defendant argues that under *Cessna* and *Freightliner,* the statute at issue is for the benefit of the government and GEGC is not entitled to rely on the A & E estimate to sustain a cause of action.

While the Court agrees that GEGC's standing to challenge the A & E contract is tenuous, it does not need to reach that

question because the statute and applicable legislative history make it clear that the government is the primary beneficiary of the disputed statute. First, the overall purpose of estimating a fair market price in a Section 8(a) contract is to protect the government from over-paying for a sole-source, set aside contract. *See* 15 U.S.C. § 637(a)(1)(A) (2002) (stating "[A] contract may not be awarded … if the award of the contract would result in a cost to the awarding agency which exceeds a fair market price."). Second, the government is prohibited by statute from revealing the estimate, or any supporting information, of the fair market price to any potential offeror. *Id.* at § 637(a)(3)(C). Finally, the legislative history demonstrates that under no circumstances should such confidential business information be disclosed to a potential offeror. H.R. Conf. Rep. 100–1070, 100th Cong., 2d Sess., 1988 U.S.C.C.A.N. 5401, 5500 (Oct. 7, 1988). Based upon the Federal Circuit's reasoning in *Freightliner*, it appears to this Court that the regulations governing the estimate of the government's fair market price in a Section 8(a) contract are internal operating procedures and exist primarily for the benefit of the government. Therefore, GEGC may not maintain a cause of action based on 15 U.S.C. § 637(a)(3)(B)(ii).[3]

■ Plaintiff's second argument for voiding the express contract is that the statutory and regulatory scheme of the Section 8(a) program is designed to resolve discrepancies between the offered price and the estimated fair market price in favor of the 8(a) contractor. Specifically, GEGC relies on VAAR § 819.800(d), which states that contracting officers "will request an audit in accordance with § 815.805–5 on proposals in excess of $500,000 before negotiating any contract or modification." The plaintiff also argues that the government violated VAAR § 819.806 by failing to investigate and resolve any dispari-

ties between GEGC's offered price, the government's estimated fair market price, and the A & E estimate. GEGC claims that these procedures are intended to prevent the award of contracts to a Section 8(a) contractor that are underpriced, and to provide both the SBA and the contractor a chance to reevaluate the offered price and make an informed decision as to whether to enter the contract. In effect, plaintiff argues that these regulations are an additional line of mandated program protections for Section 8(a) contractors.

The Court agrees with GEGC that the overall purpose of the Section 8(a) program is to aid, assist, and counsel small-business concerns in contracting with the government to preserve and promote the free enterprise system. 15 U.S.C. § 631(a) (2002). The assistance, however, is not absolute, and the government has promulgated safeguards to ensure that contracts are awarded in an efficient and cost-effective manner. For instance, plaintiff's claim that the government violated VAAR § 819.900(d) by failing to perform a pre-award audit is unavailing, because as VAAR § 15.805–5(c)(1) states an audit should not be requested when "information available to the contracting officer is considered adequate to determine the reasonableness of the proposed cost or price." The language of the regulation provides the contracting officer, not the Section 8(a) contractor or the SBA, with the discretion as to whether or not to conduct a pre-award audit. Here, after GEGC made its initial offer of $1.3 million the government clarified certain specifications and eliminated the removal of the existing fire alarm system from the contract. Therefore, it does not appear that the contracting officer violated VAAR §§ 819.900(d) & 15.805–5, and even if they were violated, the regulations are internal operating procedures designed to protect the

---

3. Even if GEGC could have relied on the government's A & E estimate, they have failed to present the Court with any authority to support their theory of reasonable reliance. The plaintiff argues that a bidder who acts reasonably "is entitled to rely on Government estimates as representing honest and informed conclusions [and the Government] is obliged to base that estimate on all relevant information that is reasonably

available to it." *D.F.K Enters., Inc. v. United States,* 45 Fed.Cl. 280, 287 (1999) (quoting *Womack v. United States,* 182 Ct.Cl. 399, 389 F.2d 793, 801 (1968)). However, *D.F.K Enterprises* involved a government estimate that was expressly incorporated in the contract. Here, GEGC does not dispute that the A & E estimate was never included in the VAMC contract, and therefore, the argument is unpersuasive.

government from paying more than the estimated fair market price. *See Freightliner,* 225 F.3d at 1365. The same reasoning leads us to the conclusion that the plaintiff may not rely on a violation of VAAR §§ 819.900(d) & 15.805–5 to maintain a cause of action.

■ The plaintiff's final allegation of a regulatory violation concerns the lack of an investigation into the disparity between GEGC's offered price and the estimated fair market price. As plaintiff argues, the record does not indicate that the government "collaborated" with the SBA regarding the difference between GEGC's initial offer of $1.3 million and the government's estimated fair market price of $900,000. *See* 48 C.F.R § 819.806 (2002) (stating "SBA should be informed as soon as a disparity between the 8(a) offered price and the estimated fair market price is determined."). However, similar to VAAR § 15.805–5(c)(1), the language of the regulation appears to vest the determination of any disparity in the hands of the contracting officer, not the SBA or the Section 8(a) contractor. In this case, the undisputed record reveals that GEGC lowered its initial offer three times to a final offer of $900,000 on August 1, 1995. Therefore, any initial disparity was voluntarily extinguished by GEGC, and the contracting officer was never forced to make the determination envisioned by VAAR § 819.806. Furthermore, while VAAR § 819.806 is silent on any right available to a Section 8(a) contractor, 15 U.S.C. § 637(a)(3)(D) places the burden on the private contractor to request the SBA to challenge an agency's estimate of the fair market price. *See also* 48 C.F.R. §§ 19.806(c) & 19.810 (2002) (confirming that the only rights held by the contractor are to request the SBA to review the estimate, and appeal to the agency if necessary). Lastly, even if the contracting officer violated VAAR § 819.806, the regulation exists primarily for the benefit of the government, as the regulation serves to ensure that the award of a sole source, set-aside contract not result in a cost that exceeds the government's estimated fair market price. 48 C.F.R. § 19.806(b)

(2002); *see also Cessna Aircraft,* 126 F.3d at 1451–52 (finding that "[I]f the primary intended beneficiary of a statute or regulation is the Government, then a private party cannot complain about the Government's failure to comply with that statute or regulation, even if that party derives some incidental benefit from compliance with it.").

## 2. Type of Contract

■ GEGC alternatively asserts that the contract should be considered void because the law required the contract to be priced upon GEGC's costs plus a fee rather than a fixed price. In the instant case, the solicitation specifications for the VAMC project stated that "the [G]overnment contemplates award of a Fixed–Price Construction Contract resulting from this solicitation." Def. Mot. to Dismiss App. A at 12 (citing 48 C.F.R. § 52.216–1 (2002) ("Type of Contract")). In addition, FAR § 36.207(a) makes clear that "firm-fixed price contracts generally shall be used for construction purposes." As the defendant correctly argues, the undisputed record reveals that GEGC was on notice of the type of contract from the inception of the project. In addition, plaintiff failed to cite to any specific authority to support its claim that the law required the contract to be awarded as a costs plus fee contract. Therefore, the Court believes GEGC waived its initial ground for invalidation of the express contract when it knowingly entered into the sole source contract. *PCL Constr. Servs., Inc. v. United States,* 41 Fed.Cl. 242, 262–63 (1998) (stating "plaintiff failed to raise its objection prior to award of the contract, despite an opportunity to do so. Any objection to the choice of contract type should have been raised prior to submission of bids, and, certainly, prior to contract completion.").

## 3. Violation of the Anti–Deficiency Act

■ Lastly, GEGC alleges that the government violated the Anti–Deficiency Act, 31 U.S.C. § 1341[4] by forcing GEGC to reduce

---

4. In pertinent part, § 1341 provides that:
   An officer or employee of the United States Government . . . may not

(A) make or authorize expenditure or obligation exceeding amount available in appro-

its price during negotiations to remain within appropriated funds. While the applicability of the Anti–Deficiency Act to plaintiff's claim is questionable, the Court does not need to reach that question because the undisputed facts reveal that GEGC was given notice during the solicitation process that "funds are not presently available for this contract" and that the "[G]overnment's obligation under this contract is contingent upon the availability of appropriated funds." Def. Mot. to Dismiss App. A at 12 (citing 48 C.F.R. § 52.232–18 (2002) ("Availability of Funds")). Therefore, plaintiff waived any objection to the procurement deviation when it knowingly entered into the contract without formally objecting to the procurement deviation. *See PCL Constr.*, 41 Fed.Cl. at 252 (stating "[U]se of the 'subject to the availability of funds' clause in question was apparent on the face of the solicitation, so that any objections . . . to the use of the clause or failure to follow FAR administrative procedures should have been raised prior to the submission of bids. Absent timely objection, the issue is waived."). The Court also notes that GEGC failed to demonstrate any harm associated with this alleged violation as they received the full contract price. Therefore, plaintiff does not, and could not, contend that it expected to be paid more than the agreed contract value, or that it would not have proceeded if it had known that a larger amount would not be available. Plaintiff's position, not the government's actual conduct, would violate the Anti–Deficiency Act.

For the reasons stated above, the Court finds the express contract between GEGC and the VA to be valid and enforceable. The plaintiff has failed to allege a set of facts that taken as true would entitle it to relief under the law. Therefore, defendant's Motion to Dismiss Counts VI and VII for failure to state a claim is granted.

B. Implied–in–Fact Contract and *Quantum Meruit* Relief

Counts I, III, and V of the Complaint seek *quantum meruit* relief for breach of an im-

plied-in-fact contract. GEGC argues that the government's unlawful acts invalidated the express contract, in whole or in part, and they are entitled to recovery where the invalid contracts terms are implied and reformation is permitted to correct the illegal terms. The government responds that the implied-in-fact contract claims should be dismissed as a matter of law because the express contract is valid and covers the same subject matter as the alleged implied-in-fact contract.

■ The Court of Federal Claims explained in *Medina Construction* that "it is well established that an implied-in-fact contract cannot exist if an express contract already covers the same subject matter, unless the implied contract is entirely unrelated to the express contract." *Medina Constr., Ltd. v. United States,* 43 Fed.Cl. 537, 558 (1999). *See, e.g., Trauma Serv. Group v. United States,* 104 F.3d 1321, 1326 (Fed.Cir.1997) (discussing definition of implied-in-fact contract); *Atlas Corp. v. United States,* 895 F.2d 745, 754 (Fed.Cir.1990) (explaining elements of implied-in-fact contract). In this case, GEGC has not alleged that the implied-in-fact contract claims cover different subject matter than the express contract. GEGC argues instead that an implied-in-fact contract may exist where the express contract has been found in violation of the law. *See, e.g., Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1185–86 (Fed.Cir.1988); *Gold Line Refining Ltd. v. United States,* 43 Fed. Cl. 291, 295–96 (1999). Therefore, plaintiff's implied-in-fact contract claims may only survive if Counts VI and VII survive the motion to dismiss. As the Court found in Part III.A., the express contract between GEGC and the government was not void or voidable. Therefore, an express contract remains and plaintiff's *implied-in-fact contract theory fails* to set forth an allegation that would entitle it to relief. Defendant's Motion to Dismiss the implied-in-fact contract claims in Counts I, III, and V for failure to state a claim is granted.

---

priation or fund for the expenditure or obligation;
(B) involve [the] government in a contract or obligation for the payment of money be-

fore appropriation is made unless authorized by law.
31 U.S.C. § 1341(A)-(B) (1983).

### C. Superior Knowledge

In Counts III and V, plaintiff also alleges that the government possessed superior knowledge as to the degree of congestion and traffic at the VAMC and the inaccuracy of the government's estimate. The Federal Circuit has enumerated the necessary elements for a superior knowledge claim as follows: "(1) a contractor undertakes to perform without vital knowledge of a fact that affects performance costs or duration; (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information; (3) any contract specification supplied misled the contractor, or did not put it on notice to inquire; and (4) the government failed to provide the relevant information." *Petrochem Servs., Inc. v. United States*, 837 F.2d 1076, 1079 (Fed.Cir. 1988). A plaintiff must prove all four of these elements to prevail on a superior knowledge claim.

First, plaintiff alleges that it was not provided with information on congestion or traffic at the VAMC, and the lack of the information affected its performance. While the degree of congestion and traffic at the VAMC may have been vital to the performance of the contract, the Court does not need to reach that question because the undisputed record indicates that the contractor was placed on notice to inquire as to the alleged vital information. First, plaintiff concedes that it possessed substantial prior experience in the very buildings in which it was going to perform the contract. GEGC also admits that it based its bid upon the solicitation and its own site investigation. Moreover, a review of the contract provisions clearly placed the burden upon plaintiff not only to conduct its own site investigation, but to do so in a fashion that would take into account the contract requirement that VAMC traffic not be impeded. Def.'s Mot. to Dismiss App. at 79, 103, 105–07; *see also* 48 C.F.R. §§ 52.215–13(a) & 52.236–3(a)–(b) (2002) (stating that bidders are to acquaint themselves with work conditions, and that the government assumes no responsibility for any conclusions made by the contractor based on government information). Plaintiff does not dispute that the solicitation itself, as well as the contract, placed the burden of examining the drawings, specifications, schedule, and all instructions on the contractor. Therefore, plaintiff's initial superior knowledge claim fails to allege a set of facts that would entitle him to relief.

Second, plaintiff alleges that the government possessed superior knowledge and withheld information that the government estimate was flawed. Specifically, GEGC alleges that the government intentionally limited the A & E contractor's scope of work by reducing the forty (40) site analysis and failing to provide the necessary data. The failure to provide the appropriate data to the A & E contractor allegedly directly affected GEGC by increasing performance costs under the VAMC project. The defendant counters that GEGC is not entitled to rely upon an estimate not included in the contract, nor an estimate that was procured for the benefit of the government. Even assuming plaintiff's allegations are true, Part III.A. demonstrates that the government estimate was for the benefit of the government and GEGC was not entitled to rely upon such information. Again, the Court is not required to reach the question of whether the government estimate amounted to vital knowledge that affected plaintiff's performance. This is so because the government cannot be held to have failed to provide information when it had no duty to provide that information. Accordingly, plaintiff's second basis for a superior knowledge claim against the government fails to set forth a set of facts that would entitle GEGC to relief. The Court therefore finds this as an additional basis to grant defendant's Motion to Dismiss Counts III and V for failure to state a claim.

### D. Breach of Covenant of Good Faith and Fair Dealing

In Count II, plaintiff alleges that the government acted in bad faith in the contract negotiations by failing to provide plaintiff with accurate and complete information. Specifically, plaintiff claims that "the government's actions were intended to unreasonably shift the risk of performance on GEGC for the increased cost of labor, material and

unreasonable extension of the completion date beyond the accelerated date approved by the VACO." Compl. ¶ 121. The government argues that Count II should be dismissed for failure to state a claim because plaintiff could not reasonably have relied upon a government estimate that was neither part of the solicitation nor the contract.

■ The obligation of good faith and fair dealing is an implied covenant in every contract. *Asco–Falcon II Shipping Co. v. United States,* 32 Fed.Cl. 595, 604 (1994). Plaintiff correctly points out that the government must deal fairly with the public and perform its duties under the contract reasonably and in good faith. *See* 48 C.F.R. § 1.102–2(c) (2002). There is, however, a general presumption that government officials act conscientiously and in good faith, and to overcome the presumption contractors must submit "well-nigh irrefragable proof" of bad faith. *Schweiger Constr. Co. v. United States,* 49 Fed.Cl. 188, 199 (2001) (citing *Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 543 F.2d 1298, 1301–02 (1976), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977)). Courts have often equated "well-nigh irrefragable proof" with evidence of some specific intent to injure the plaintiff. *Kalvar Corp.,* 543 F.2d at 1302. Therefore, in order for Count II to survive defendant's motion to dismiss for failure to state a claim, plaintiff must allege facts which if proved would constitute malice or a specific intent to injure the plaintiff. *Asco–Falcon II,* 32 Fed.Cl. at 604; *see also Texas Instruments, Inc. v. United States,* 991 F.2d 760, 768 (Fed.Cir.1993) (stating that to prevail on a claim for breach of good faith and fair dealing, a plaintiff must allege and prove a set of facts constituting a specific intent to injure plaintiff on the part of a government official).

■ As evidence of the government's bad faith and unfair dealing, plaintiff puts forth two types of allegations. First, plaintiff alleges that the government negotiated in bad faith by failing to disclose certain types of information, including the government's estimate, that adversely affected plaintiff's final contract offer. The government responds with several arguments, including: (1) the contract solicitation included provisions placing the burden on the plaintiff to examine the drawings, site conditions, schedule, and specifications; (2) the allegedly defective estimate was never incorporated into the contract; and (3) the contract disclaimed the government from any pre-award understanding reached or representation made by a government official not expressly stated in the contract. Thus, even if plaintiff's allegations could surmount clear contract language to the contrary, they do not contain the necessary element of malice or specific intent to injure GEGC necessary to overcome the presumption of good faith enjoyed by the government. *See Continental Collection & Disposal, Inc. v. United States,* 29 Fed.Cl. 644, 652 (1993) (stating "[T]o demonstrate bad faith, specific instances of the government's ill will directed toward the plaintiff must be identified."). Plaintiff's allegations raise no issue of bad faith, only a legal dispute at best.

Second, plaintiff claims that the government failed to obtain legal and administrative approvals for regulatory deviations prior to the award of the contract, and failed to make an equitable adjustment during the performance of the contract. In evaluating a motion to dismiss, the court will presume factual allegations as true, but conclusory allegations without any supporting facts cannot withstand a motion to dismiss. *Asco–Falcon II,* 32 Fed.Cl. at 605. It is clear that these allegations present mere legal conclusions, as opposed to factual allegations, and therefore need not be accorded the presumption of truth. In addition, as demonstrated in Part III.A., the purpose of the estimated fair market price and a pre-award audit are for the benefit of the government, and GEGC is not entitled to rely upon the supporting regulations to support a claim. Lastly, even assuming the allegations could be construed as factual and taken as true, the government cannot be found to be acting in bad faith for failing to obtain something it was not required to do. Nothing in plaintiff's Complaint, even when construed in the light most favorable to GEGC, constitutes malice or an intent to injure the plaintiff on the part of the government. *See* RESTATEMENT (SECOND)

OF CONTRACTS § 205 cmt. d (1979) (bad faith in performance includes evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance). Therefore, the Court grants defendant's Motion to Dismiss Count II for failure to state a claim.

### E. Mutual Mistake

■ In Count VIII, plaintiff alternatively asserts that reformation on the grounds of mutual mistake is warranted because the parties were mistaken about the same fact, that is "the contract was susceptible of performance at a cost less than the fair market value of $900,000 and/or the Government's estimate of $771,000." Pl.'s Opp. to Def.'s Motion to Dismiss at p. 22. A party seeking reformation upon the ground of mutual mistake must establish that (1) the parties were mistaken in their belief regarding a fact; (2) the mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material effect on the bargain; and (4) the contract did not put the risk of the mistake on the party seeking reformation. *Atlas Corp. v. United States,* 895 F.2d 745, 750 (Fed.Cir.1990), *cert. denied,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). The erroneous belief held by the parties must relate to an existing fact. *See Dairyland Power Coop. v. United States,* 16 F.3d 1197, 1202 (Fed.Cir.1994). In addition, "a prediction or judgment regarding an event to occur in the future, if erroneous, does not constitute a 'mistake,' as the term is contemplated within the doctrine of mutual mistake of fact." *ECC Int'l v. United States,* 43 Fed.Cl. 359, 371 (1999).

■ In the instant case, plaintiff's mutual mistake claim fails as a matter of law on two counts. First, even if the parties were mistaken, they were mistaken about a different fact. Plaintiff's Complaint alleges that GEGC was mistaken as to the reduction in its contract price, while the VA was mistaken about performance within 700 days at the negotiated price. Compl. ¶¶ 167–68. The claim fails because the allegations do not point to the same underlying material fact

forming the basis of the bargain. *Atlas Corp.,* 895 F.2d at 750. Second, the alleged mistake regarding the amount of site congestion, or that the cost to perform was $900,000, or that performance would be completed within 700 days, all relate to future events, not existing facts. As *Atlas Corp.* suggests, "[I]f the existence of a fact is not known to the contracting parties, they cannot have a belief concerning that fact; therefore, there can be no 'mistake.'" *Id.* These "predictions or judgment[s] regarding an event to occur in the future" are not sufficient to support a mutual mistake claim. *ECC Int'l,* 43 Fed.Cl. at 371. Therefore, defendant's Motion to Dismiss Count VIII for failure to state a claim is also granted.

## IV. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A. Negligent Misrepresentation

In Count IV, plaintiff alleges that the "[G]overnment's misrepresentation as to the Contract estimates, through its failure to make contractually required disclosures, was breach of the Contract." Compl. ¶ 137. Similar to plaintiff's other claims, the negligent misrepresentation count is based on actions taken by the government, specifically the use of an allegedly defective estimate, in negotiating the contract with the plaintiff. The government argues that plaintiff's negligent misrepresentation claim should be dismissed for lack of subject matter jurisdiction because: (1) misrepresentation is a tort over which this court lacks jurisdiction; and (2) the claim fails as a matter of law because plaintiff unreasonably relied upon the estimate provided to the government. Plaintiff responds that the law supports its reliance on the estimate, and that the negligent misrepresentation claim is an exception to this court's jurisdictional bar on torts because it involves an allegation of a tortious breach of contract.

■ The government correctly argues that as a general rule this court does not have jurisdiction over tort claims against the United States. *See* 28 U.S.C. § 149(a)(1). The Court of Claims, relying on *United*

*States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), determined that claims "sounding in tort" include those " 'based on negligent misrepresentation, wrongful inducement, or the careless performance of a duty allegedly owed.' " *Aetna Casualty & Surety Co. v. United States,* 228 Ct.Cl. 146, 164, 655 F.2d 1047 (1981). The court, however, has recognized an exception to the general rule where claims are based on a "tortious breach" of a government contract. *Morris v. United States,* 33 Fed.Cl. 733, 742 (1995); *Summit Contractors, Inc. v. United States,* 22 Cl.Ct. 54, 56 (1990). The exception applies where the plaintiff's tort claim is " 'entirely dependent on, and in fact evolves from the contract.' " *CTA Inc. v. United States,* 44 Fed.Cl. 684, 698 (1999) (quoting *Dureiko v. United States,* 42 Fed.Cl. 568, 582 (1998)). Therefore, the "relevant inquiry is whether there is a nexus between the alleged tortious conduct and some alleged contractual obligation." *D.F.K. Enters., Inc. v. United States,* 45 Fed.Cl. 280, 284 (1999).

██ In this case, GEGC argues that the government was under a contractual duty to disclose the defective nature of the A & E estimate, and the government's failure to disclose was a breach of contract. Even assuming the government's estimate was inaccurate, plaintiff's negligent misrepresentation claim must fail due to the fact that, as discussed *supra* Part III.A., plaintiff's underlying claimed failed as a matter of law because the government was under no contractual duty to disclose the estimate to the plaintiff. As such, there can be no nexus between the alleged tortious conduct and a contractual obligation. Furthermore, the government argues that plaintiff's negligent misrepresentation claim must be dismissed because plaintiff is not entitled to rely upon a government estimate, whether negligent or illegal, that is not expressly incorporated into the contract. Specifically, the government points to *Dakota Tribal Indus. v. United States,* which held that a negligent misrepresentation claim arising out of a contract cannot lie if the misrepresentation was not expressly incorporated into the contract. 34 Fed.Cl. 295, 298–99 (1995). Here, as in *Dakota Tribal,* the plaintiff must allege a connection between the government's misrepre-

sentation and an express contract term. Count IV fails to allege a connection between the defective estimate and an express contract term. While plaintiff implicitly suggests the contract price reflects the defective estimate, this is not a contract provision the government could breach, absent a failure to pay the stated amount. *See id.* at 299 n. 4. Accordingly, plaintiff's negligent misrepresentation claim does not fall within the exception to the jurisdictional bar to claims sounding in tort, and defendant's Motion to Dismiss Count IV for lack of subject matter jurisdiction is granted.

### B. Implied–in–Law Contract and *Quantum Meruit* Relief

Counts I, III, and V of plaintiff's Complaint assert an implied contract and seek *quantum meruit* recovery, or specific money damages. The Complaint left for the Court to determine upon which contract theory, implied-in-law or implied-in-fact, GEGC's claims were based. As discussed above, the implied-in-fact contract claims in Counts I, III, and V did *not* survive defendant's motion to dismiss because the existence of an express contract superceded the implied-in-fact contract. *See Medina Constr.,* 43 Fed.Cl. at 558. Therefore, the Court will briefly address the remaining implied contract theory upon which relief could be granted.

██ A contract implied-in-law "is a fiction created by the court" that "imposes a quasi-contractual obligation on the parties to bring about justice." *Wells Fargo Bank, N.A. v. United States,* 26 Cl.Ct. 805, 817 (1992). The Court declines to reach the issue of whether an implied-in-law contract existed, because the Supreme Court has repeatedly held that although this Court's jurisdiction extends to contracts implied-in-fact, it can not entertain claims on contracts implied-in-law. *Hercules, Inc. v. United States,* 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996); *see also Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 69 L.Ed. 643 (1925); *United States v. Mitchell,* 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). As a general rule, claims sounding in *quantum meruit* are also outside this Court's

jurisdiction.[5] *Medina Constr.*, 43 Fed.Cl. at 557. GEGC complains that the "[G]overnment has received the full benefit of GEGC's completed performance of the Contract." Compl. ¶ 115. "To the extent that [GEGC's] theory is based on a theory of unjust enrichment, that doctrine assumes the existence of a contract implied-in-law. This Court would have no jurisdiction over such a claim." *Glopak Corp. v. United States*, 12 Cl.Ct. 96, 104 n. 6 (1987), *aff'd*, 851 F.2d 334 (Fed.Cir.1988). Thus, a suit based on a theory of *quantum meruit* or unjust enrichment is a suit based on a contract implied-in-law, and this court does not possess jurisdiction over such claims. *See, e.g., United States v. Mitchell*, 463 U.S. at 208, 103 S.Ct. 2961; *Fincke v. United States*, 230 Ct.Cl. 233, 246, 675 F.2d 289 (1982). Therefore, GEGC's remaining claims in Counts I, III, and V seeking an implied-in-law contract and *quantum meruit* recovery also must be rejected.

## CONCLUSION

For the reasons stated above the Court GRANTS defendant's Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted and GRANTS defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. The Clerk of the Court is directed to dismiss the case, and each party shall bear its costs.

It is so **ORDERED.**

---

**5.** The Court acknowledges that the Federal Circuit has recognized that *quantum meruit* recovery is available under an implied-in-fact contract in certain situations. *United States v. Amdahl Corp.*, 786 F.2d 387, 393 (Fed.Cir.1986). As stated in Part III.B. of this opinion, however, GEGC's implied-in-fact contract claims must be rejected.